PARDON G. SEABURY, WARD M. PARKER, AND HENRY B. GIFFORD v. J. D. ARTHUR, W. N. ARTHUR, LYNCH GRIFFIN, JOHN REGAN, JOHN McTAMNEY, AND ANDREW THOMPSON.

BEACH AND WATER LOTS OF SAN FRANCISCO.—The Act of March 26th, 1851, making provision for the disposition of the beach and water lot property of San Francisco, operated as a confirmation of all "Ayuntamiento sales" and "Alcalde grants"

of said property theretofore made, and upon the passage of said Act the title of the grantees and their successors in interest related back to the date of the sale or grant.

SAME.—Where there had been more than one grant of any portion of said property before the passage of the Act by an Alcalde in the usual mode, or in pursuance of a sale, or by order of the Ayuntamiento, the confirmation by relation attached to the oldest grant, and vested the title in the grantee of such eldest grant.

HOW TO ARRIVE AT MEANING OF LAWS.—The whole of a legislative Act must be construed together, and interpreted according to the intention of the Legislature apparent upon its face.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

On the 25th day of September, 1848, William C. Parker presented a petition to T. M. Leavenworth, Alcalde of San Francisco, for a grant of the block of land then covered by water, bounded by Washington street on the north, west by a street now known as Front street, south by Clay street, and east by a street now known as Davis street, and numbered on a map of San Francisco as block No. 456, which block included the demanded premises. On the same day the Alcalde made and executed a grant of the premises to said Parker, and made a registry thereof in a book then kept by him and now in the possession of the County Recorder of the County of San Francisco, known as Book B of District Records, page 31. The grant was delivered by the Alcalde to Parker in January, 1849, and the same was presented for record and recorded in the Recorder's office, November 28th, 1849, in a book of records then kept by the Alcalde, and now in the possession of the County Recorder, and known as Book F of Deeds.

On the 11th day of October, 1848, the Ayuntamiento or Town Council of San Francisco ratified and confirmed all grants of land which had been made by Alcalde Leavenworth.

On the 1st day of April, 1850, the said Ayuntamiento again confirmed and ratified all grants of land made within the District of San Francisco by the Alcalde.

H. L. Douglass, the lessor of defendant, at the time this suit was commenced had acquired by mesne conveyances all

the title of said Parker to the demanded premises, and had also acquired the reversionary interest of the State in the property, under a sale made by the Board of California Land Commissioners.

On the 3d day of October, 1849, the Ayuntamiento or Town Council of San Francisco passed a resolution directing all the water lots belonging to the town to be sold at public auction, after public notice of the same being given for three months, and further directing that immediate public notice be given that the grants of water property heretofore made by Alcalde Leavenworth, without three months previous notice of the making of such grant, are illegal, and that the property will be claimed and held by the town until sold at public auction.

January 3d, 1850, John W. Geary, then Alcalde, sold at public auction, in accordance with the resolution of October 3d, 1849, water lot No. 464, including the premises in controversy, to Thomas Sprague, for one thousand seven hundred dollars, and executed and delivered to him a deed therefor.

Plaintiffs at the time this action was commenced had acquired all of Sprague's title to the demanded premises. The complaint was in ejectment, in the usual form. The District Court gave judgment for defendants, and plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*S. W. Holladay*, for Appellants.

" The regularity of the respective grants is not contested." The following, then, are the positions assumed by the respective parties hereto.

The defendants' claim superior title to the land, under the Water Lot Act, because :

1st. Their Alcalde grant is of a date prior to that of plaintiffs' ; and,

2d. Because, as they are in possession, with title, plaintiffs cannot recover without showing better title.

On the other hand, plaintiffs claim :

1st. That, in a case like this, of two grants to the same

land, (one of each sort mentioned in the statute,) the Water Lot Act gave the land to the *purchasers* at the Alcalde's auction sale, (plaintiffs' title) in preference to the Alcalde's grantees, on petition, (defendants' title.)

2d. In case plaintiffs are not sustained in that position, then, as there are two grants to the same land, both of which come within the terms of the statute, then the law gives the land to *both* of them, equally, and as both cannot take the whole, it follows that each takes one half, and the judgment should have been for plaintiff for an undivided half.

The decision of this case depends upon the construction of the Water Lot Act of March 26th, 1851, entitled "An Act to provide for the disposition of certain property of the State of California."

The Act does not "confirm" these various city titles or Alcalde grants or deeds; but, on the contrary, it contains express, positive, and apt words of grant *in presenti*. "The same (*i. e.* the lots of land) are hereby granted," is the language of the statute. These papers produced by the respective parties, such as an Alcalde grant, or a deed by the Alcalde at the auction sale, according to the Kearny grant, are useful only to designate the legislative grantees respectively—they are referred to as the earmarks, to identify the donees contemplated in the Act as *descriptio personæ* of the legislative grantees; but the papers themselves, or rather the transactions noted in them, are not confirmed by the statute in terms, nor by implication.

As between the purchasers at the auction sale and the grantees of the Alcalde, the Act "hereby" grants the land, first and in preference, to the *purchasers* at the auction sale, as distinguished from the Alcalde grantees; or in the absence of such *purchaser*, then it gives the land to any grantee of the Alcalde. This plain distinction runs clear through the second section of the Act. The lands "which have been sold" are first enumerated before those which have been "granted" by any Alcalde. Next, the lands are hereby granted and con-

firmed to the *purchasers* before the grantees; and, lastly, the State relinquishes the use and occupation of the land to the *purchasers*, or in the absence of such, to the grantees.

*Haight & Pierson*, for Respondents.

Upon what ground any paramount right can be asserted by a party *out of possession*, under a *subsequent* confirmed grant, against a claim against a party *in possession* under a *prior confirmed grant*, it would not be easy to discover.

The argument seems to be that as the purchasers are named *first* in the order of the words in the statute, when the language is "purchaser or purchasers or grantees," *therefore*, in case of a conflict between a purchaser and a grantee, the purchaser has the better title.

This idea, now advanced for the first time, does not seem to have been suggested to the Court in the case of *Seabury* v. *Field*, involving this same lot, decided by the Supreme Court of the United States, in Howard, p. 324, and has therefore the merit of novelty. Where different classes of grants are named in a statute as the subject of confirmation, no one ever before supposed that the order of the words had anything to do with the question of priority.

If A. and B. each have a grant of the same lot, and both grants are confirmed, whether A. or B. is named first would be wholly immaterial. The confirmation would in each case relate back to the date of the grant, and the grant which was first made in fact must have precedence.

The word "confirm" is used, which indicates the nature of this legislative Act. (Sedgwick on Construction, 591.)

Burrill, in his Law Dictionary, defines confirmation as " a conveyance of an estate or right *in esse* whereby a voidable estate is made sure and unavoidable, or whereby a particular estate is increased;" also as "an approbation of or assent to an estate already created by which the confirmation strengthens and gives validity to it as far as it is in his power." He says the most common and proper words are "ratified, approved, and confirmed;" and Blackstone says (Book 2d, marg. p. 325)

the most usual words are " given, granted, ratified, approved, and confirmed ;" thus indicating the similarity of sense between ratification and confirmation, which are really equivalent words.

If, then, the Act of 1851 was in its essence and effect a confirmation of these grants, the same rule applies which is stated by the United States Supreme Court in *Landes* v. *Brant*, 10 Howard, 372, " that where there are divers acts concurrent to make a conveyance, estate, or other thing, the original act shall be preferred, and to this the other acts shall have relation." (Viner's Abr. Tit. Relation, 290 ; *Jackson* v. *Ramsay*, [printed McCall,] 3 Cowen, 79, 80 ; *Crowley* v. *Wallace*, 12 Mo. 147.)

By the Court, Sawyer, J.

The lands in question constitute a portion of the "beach and water lots" of San Francisco, as defined by the Act of March 26th, 1851, entitled " An act to provide for the disposition of certain property of the State of California." (Laws 1851, p. 307.) The defendants are in possession, claiming title under the provisions of said Act, and a grant to William C. Parker from Alcalde Leavenworth, dated September 25th, 1848, confirmed by resolutions of the Ayuntamiento or Town Council of the District of San Francisco, and registered and recorded before the 3d day of April, 1850, in the books of record then in the Alcalde's office, but afterwards turned over to, and now remaining in the custody of the Recorder of San Francisco, and also constituting a portion of the records of his office.

Plaintiffs seek to recover the lands, and rely upon the same Act and a grant to Thomas Sprague, executed by Alcalde Geary in pursuance of a sale at auction of the beach and water lots by direction of the Ayuntamiento, made on the 3d day of January, 1850. The question is, as to which party acquired the title.

Section two of the Act provides, that, " all the lands mentioned in the first section of this Act, which have been sold

by the authority of the Ayuntamiento, etc., * * *; or which have been sold or granted by any Alcalde, etc., * * [describing the lands in terms sufficiently broad to embrace both of said grants,] shall be and the same are hereby granted and confirmed to the purchaser or purchasers or grantees aforesaid, by the State relinquishing the use and occupation of the same and her interest therein to the said purchasers or grantees, their heirs or assigns, or any person or persons holding under them, for the term of ninety-nine years." * * It then exempts the Government reservations, " except that any estate held by virtue of any lease or leases executed or confirmed by any officer of the United States on behalf of the same, shall be and the same are hereby granted and confirmed to the lessees thereof." * * *

Section three provides, that " the original deed or other written or printed instruments of conveyance, by which any of the lands mentioned in the first section of this Act were conveyed or granted by such Common Council, Ayuntamiento or Alcalde * * * may be read in evidence in any Court of justice in this State, * * * and shall be *prima facie* evidence of title and possession, to enable the plaintiff to recover the possession of the land so granted."

It is said that these provisions do not in terms purport to confirm the grants—the instruments executed by the Alcaldes —but, on the contrary, to make an original legislative grant without reference to any equitable rights of the parties claiming under the Alcalde grants; that those sales and grants were referred to, not because it was intended to validate and confirm them, but only to identify the individuals who were to be the recipients of the legislative bounty. It is true, the instruments in writing are not expressly mentioned as the objects to be confirmed. But the instruments are not the grants or things to be confirmed. They are but the evidence of the action of the municipal officers. But the Act does refer to lands " sold by authority of the Ayuntamiento," or " sold or granted by the Alcaldes," etc., and says that " the same are hereby granted and confirmed to the purchaser, or purchasers, or

grantees aforesaid." The term "granted" is used, it is true, but the word "confirmed" is also used with reference to the prior sales and grants, and the purchasers and vendees under them, which shows that it was the intention to validate and give effect to the former sales and grants, which were invalid without such confirmation. When speaking in the same section of leases by the Government officers—which were equally invalid—the Legislature say, "that any *estate* held by virtue of any lease, etc., shall be and the same is hereby granted and confirmed to the lessees thereof." These leases did not purport to grant the land, and the Act did not grant or confirm *any estate* except that which the leases themselves purported to convey. It is evident from the whole object, scope and tenor of the Act, and the circumstances surrounding the subject matter about which the Legislature were then legislating, that there was something more intended by the language used than the identification of the objects of legislative bounty. Parties had procured grants and leases of lands from the only officers who assumed to act in such matters, upon the consideration usually demanded at that time, and had made valuable improvements on the faith of such contracts. It manifestly seemed to the Legislature that such parties had an equitable claim upon the State to have their grants confirmed, and in consideration of such supposed equitable rights these provisions were introduced into the Act, with the intent not only to grant these lands, but to grant and confirm them to the parties supposed to have the equitable title, and to no others; and to confirm the lands to such parties in the character of purchasers and grantees under the original grants, and not as the recipients of gratuitous favors. No other parties are referred to or provided for in the Act, and the word "confirmed" is an apt and proper one to express that intention. This intent appears the more clearly from the provisions of the third section, where the instruments executed by the Alcalde are mentioned in express terms, and it is provided "that the *original deed or other written or printed instruments of conveyance* by which any lands, etc., were conveyed by such Com-

mon Council, Ayuntamiento or Alcalde, etc., may be read in evidence, etc., and shall be *prima facie* evidence of title," etc. These very instruments are here expressly made the evidence of title. Why was this, if it was not intended to ratify, confirm and give them effect; if it was not designed that the legislative grant should relate to, confirm and give vitality to the grants purported to be evidenced by these instruments? We must not confine ourselves in the interpretation of this statute to the word " granted " alone, or adhere too strictly to the mere definition of words. A legislative Act is to be interpreted according to the intention of the Legislature apparent upon its face. Every technical rule as to the construction or force of particular terms must yield to the clear expression of the paramount will of the Legislature. (*Wilkinson* v. *Leland*, 2 Peters, 662.) The whole Act must be construed together. And, looking to all its provisions, we can give it no other construction than that it was the intention to confirm and give effect to the grants referred to in the Act. The word " granted " was properly used, because the title was in fact then in the State, and it might be necessary—it was at least proper—to make the act of confirmation of the former sales effectual.

Such being the case, the confirmation has relation to the Alcalde grants—the first act in the series upon which the title depends—the consideration, so to speak, upon which the legislative grant and confirmation are based, and the title by relation will date from the date of said grants by the Alcalde. The title of the defendants is, therefore, the oldest, and must prevail.

In this case the equities also seem to be with the defendants, for at the sale at auction in 1850, when the lot in question was put up, notice of the prior grant to Parker, and that the parties claimed title under it, was publicly given, and Sprague purchased with actual notice. The last sale had no greater validity than the first; and it equally required the confirmatory grant of the Legislature to give it validity.

There does not appear to us to be any force in the argument

based upon the order in which the various classes of titles confirmed are mentioned in the Act.

Appellants insist, that if they have not the prior right, the plaintiffs and defendants are, at least, both donees under the statute, standing *æquali jure*, each taking one half, and that they are entitled to recover to that extent.

Seabury before brought a suit against Field in the United States Circuit Court, to recover the lot now in controversy, and the cause went to the Supreme Court of the United States on a writ of error.    Both parties relied upon these same titles. Upon the trial in the Court below, the Judge, in his charge to the jury, among other things, said :   "Both parties in the suit bringing themselves within the classes designated, the defendants being in possession, as has been ascertained by the evidence, would, on principles of law, be entitled to a verdict." And the Supreme Court of the United States, in reviewing this portion of the charge, said :   "In this the Court was correct."   (*Seabury et al.* v. *Field*, 19 How. S. C. U. S. 330.) Admitting, then, that both parties are within the classes of grantees designated by the Act, under the law as here laid down, the plaintiffs are not entitled to recover.   There is certainly no intention manifested on the face of the Act to grant an estate in common to Parker and Sprague, or their respective grantees.

But, if the views before expressed are correct, although both are within the terms of the Act, the title of the defendants originated in a prior grant, and takes the precedence.  It must therefore prevail.

Judgment affirmed.