SAENGER *v.* NIGHTINGALE *et al.*

(*Circuit Court, D. Georgia.* April Term, 1888.)

1. MORTGAGES—PAYMENT—EVIDENCE—STATEMENTS IN INTEREST.
    In a suit to set aside a foreclosure sale, letters written by the mortgagor before the foreclosure, and tending to show that the mortgage debt had then been entirely paid, are inadmissible to bind the purchaser when there is no evidence of a conspiracy between him and the mortgagor to keep the mortgage alive after payment, in order to defraud subsequent lienholders. Such letters are merely unsworn statements, made in the interest of the writer.

2. SAME—RIGHTS OF SECOND MORTGAGEE.
    The fact that the assignee of a mortgage which constitutes a valid and subsisting lien transfers the same to the children of the mortgagor without consideration gives no ground of complaint to the holder of a second mortgage.

3. SAME.
    The fact that a mortgage was foreclosed by the assignee thereof in the name of the original mortgagee, after such assignee had transferred the mortgage to the mortgagor's children, gives the holder of a second mortgage no right to attack the title of such children as purchasers at the foreclosure sale.

4. LIMITATION OF ACTIONS—RIGHTS OF SECOND MORTGAGEE.
    Act Ga. 1869, declaring that all proceedings to recover debts due before June 1, 1865, shall be begun by January 1, 1870, is not available in favor of a second mortgagee, to defeat the title of the purchasers at the foreclosure of a first mortgage, though, as between the parties to it, the first mortgage was barred thereby before its foreclosure.

In Equity.    Bill by H. M. Saenger against William Nightingale and others to set aside a sheriff's deed made in pursuance of a foreclosure sale.    Decree for defendants.
*H. B. Tomkins,* for complainant.
*R. E. Lester* and *W. S. Bassinger,* for defendants.

McCAY, J. This was a bill filed by complainant against William M. Nightingale and others on the following statement of facts: On the 30th of January, 1855, P. M. Nightingale, the father of the defendants, made a mortgage to Charles Spaulding of Cambress island, in the county of McIntosh, Ga., to secure $100,000. The mortgage also included a number of slaves, the debt being for the purchase money of the land and slaves. The $100,000 was evidenced by certain bonds due at various dates from 1856 to 1862. Of this debt $35,000 was paid. In March, 1856, this mortgage was transferred by Spaulding to E. Mollineaux. In March, 1870, Mollineaux's executor and the mortgagor adjusted this debt thus: A certain plantation known as "Dungeness" was deeded by Nightingale to the Mollineaux estate, and a certain allowance made to Nightingale in consequence of the emancipation of the slaves, and it was finally agreed that the mortgage debt should stand at $51,250. In 1872 the executor of Mollineaux, in the name of Spaulding, for his use, proceeded to foreclose the mortgage in the state court, and in November, 1872, a judgment of foreclosure was rendered, and under this judgment the property was sold at sheriff's sale in McIntosh county, and bought by the defendant William Nightingale, for himself and the other children of P. M. Nightingale, the mortgagor; and in pursuance of said sale they were put in possession of said property, and they are now holding and claiming the said property as their own. This mortgage had been duly recorded under the laws of Georgia within a few days after its date. Previously to this foreclosure, a transfer of the mortgage had been made by those interested in the Mollineaux estate to the defendant William Nightingale, and the other children of the mortgagor, in consideration of their release of the Mollineaux estate of any claim they had or might have to the Dungeness property, previously sold by their father to the Mollineaux estate in part satisfaction of the mortgage debt. On the 6th of December, 1869, P. M. Nightingale, father of the defendants, became indebted to the complainant in the sum of $30,000, and to secure the same mortgaged to him Cambress island.

The object of this bill is to set aside the sheriff's deed to the Nightingales under the foreclosure of the first mortgage, and to subject the property to the lien of the mortgage held by the complainant. The bill charges that the first mortgage was fully paid off or settled before a foreclosure, and fraudulently kept open; but at the hearing there was not only no evidence to sustain this charge, but, on the contrary, it was shown that the deed to Dungeness and the adjustment for the emancipation of the slaves left still due on the first mortgage about $51,250. On the trial various letters of P. M. Nightingale, the mortgagor, were offered, in order to show by his statement that the first mortgage was settled; but the court rejected the letters as not competent to show, as against the defendants, such settlement. They are only the unsworn statements of one interested to make them, and are not evidence at all against the mortgagor, or against one purchasing at the foreclosure sale, unless there was evidence, which there is not, of a conspiracy between

the defendants and P. M. Nightingale to keep open this mortgage after it was settled.

It was contended that there was no consideration for the transfer of the mortgage to the Nightingale children; that there is no evidence that they had any claim to Dungeness; but I think that is wholly immaterial. If the mortgage was valid at the time, and unpaid, it would make no difference to the complainant even if the transfer made no pretense of consideration.

It was also insisted that the foreclosure of the first mortgage was void because the transfer was made before the proceeding for foreclosure commenced. The foreclosure was in the name of the original mortgagee, and was not objected to by any person having an interest in the mortgage. Any person having such interest would have a right, if he saw fit, to foreclose in the name of the original mortgagor. If the real owners of the mortgage have not and do not complain, what is that to the complainant? These facts, as well as the consideration of the transfer, the delay in the foreclosure, are all matters to be considered in determining whether or not the mortgage was paid off, or in any way settled; but the evidence of Mr. Lawton and his partner is so plain and positive as to leave no doubt that after the deed to Dungeness, and after the adjustment for the emancipation of the slaves, there was still due on the original mortgage debt over $50,000. Nor does it make any difference if Mrs. Mollineaux, who, it seems, was quite a wealthy woman, and an especial friend of the family, took little care to press for her money. Nay, it seems to me, if her debt was really unpaid, she would have a right, since it was the oldest lien, to keep it, and deliberately and intentionally and openly use it for the purpose of preserving the old home of the children of the family. If the mortgage debt was a subsisting lien, and older than the complainant's mortgage, it would be no concern of his for whose benefit it was used. Her transfer of it for a small consideration, as for the quitclaim deed to Dungeness, or even as a gift, to the Nightingale children, are facts which, with other circumstances, if any such were in proof, might go to give color to the charge that the mortgage was paid off, or in fact was settled; but the evidence fails to show this, or to give any other facts to be aided by her conduct in the premises.

At last, therefore, this case, as I think, stands alone upon the point made by the complainant, and admitted by the answer, to-wit, that the first mortgage became due before the 1st of July, 1865, and was not foreclosed until some time in 1872, and that, therefore, the mortgage debt, as well as the mortgage, was barred by the statute of limitations of the Georgia legislature, passed in 1869. That act provides that all proceedings to recover any debt due before the 1st of June, 1865, shall be begun by, on, or before January 1, 1870, or the right of action should be perpetually barred. This mortgage debt was due before the 1st of June, 1865, and the proceedings to foreclose were not commenced until more than a year after the statutory bar attached, so that it comes within the terms of the statute; and, had the mortgagor set up this defense to the foreclosure, so far as it now appears, it must have been successful.

The case as presented is therefore as follows: Complainant has an unforeclosed mortgage. The defendants are in possession, claiming title under a sheriff's sale, made by virtue of a foreclosed mortgage; but to which judgment of foreclosure the mortgagor might, had he seen fit to do so, have pleaded the limitation act of 1869, and defeated the foreclosure. The claim of this bill is that the complainant has now a right to intervene, to say to the defendants that the mortgage under which they claim title was, at the date of the proceedings to foreclose, barred by the statute of limitations; and, as his mortgage was then, and still is, a subsisting, *bona fide* lien, he has a right to foreclose and sell notwithstanding their purchase. I do not think the complainant is estopped in any legal right he might have by the judgment of foreclosure. Under the laws of Georgia, he is not either a necessary or a proper party to the foreclosure, and he is not bound by the judgment. The cases decided by the supreme court of Georgia upon this point do not exactly settle that the complainant is not bound by the judgment, because in them the mortgagor, at the commencement of the proceeding, had parted with all his title to the property; and the court in its decisions laid stress upon the gross injustice of permitting the mortgagor, after he had sold his equity of redemption, and at the time when he had no interest at all in the land, by any act of his to bind a party having a lien on the property. Still I am inclined to the opinion that the principle of these decisions is based on the fact that the second mortgagee, not being a party to the judgment, nor a privy to it, is not bound by it. These cases, however, do establish that a purchaser of the mortgagor's title is not bound by any judgment against the mortgagor had under proceedings commenced after the date of his purchase, and, if the holder of such a judgment, or of any other claim, attempts to interfere with his purchase, he has the same right of defense as the mortgagor would have. It is, without doubt, well established as a general proposition that pleas of usury, of the statute of limitations, and the like, are personal pleas or privileges, and that no person can take advantage of them but the one primarily interested. One creditor cannot set up that another creditor's debt is usurious, or barred by the statute, or is subject to any other plea of a personal and privileged character. There is, however, a well-established exception to this rule, to-wit, that a purchaser of the title from the mortgagor, unless it be one of the cases where he is estopped as being a party or privy to the judgment of foreclosure, may always, when it is attempted to set the judgment of foreclosure in motion against his title, attack it by setting up the same defenses as the mortgagor might have done had he seen fit so to do. This doctrine is based upon plain principles of justice and common sense, to-wit, that a purchaser of property from any one has the right to resist any claim against it, just as his vendor might, except in such cases as by the rule of law he is estopped; and that in a judgment foreclosing a mortgage against the mortgagor, in proceedings begun after the date of his purchase, he is not estopped unless he be a party to the judgment. This rule has been adopted and enforced in Georgia. It will, however, be noticed that in all these cases

the defendant was the purchaser of all the mortgagor's rights; that he had the title to the premises, subject, of course, to the mortgage, so far as it would be an irresistible claim as against the mortgagor. There are, so far as I can find, no cases, except the California cases, giving this right to a subsequent mortgagor who has not the title,—who has only a debt with a mortgage lien. He does not stand in the position of the defendants. He does not have the title to the premises, with the right incident to every title,—to defend it against all claims, whenever they come, except in the cases where, under a settled rule of law, the grantor has by his acts estopped him; as if, for instance, before his purchase the grantor had submitted to a judgment. In such a case, being a purchaser after the commencement of the proceedings, he is a privy to the judgment, and is therefore bound by it just as his grantor would be.

Without question, there are several California cases where this privilege is also allowed to a subsequent mortgagee, but these cases are anomalous, and are made by the court to depend on the peculiar language of the California statute. The first case is *Lord* v. *Morris*, 18 Cal. 482, though under the facts of that case it would be clear, even under the Georgia cases, the second mortgagee would have a right to set up the statute. The second mortgage was not made by the maker of the first mortgage. He had sold the fee to the third party, and it was the mortgagee of these purchasers who was permitted to insist that the first mortgage was barred by the statute. They had a right to stand in the shoes of their mortgagor, and, as he was a purchaser of the title from the first mortgagor, they had the same right he had. It is true the court, in delivering its opinion, does announce the general rule that, by reason of the peculiar character of the California statute a different rule prevails in that state from other states and in England; and one of the leading peculiarities to which the judge refers is that the California statute bars the mortgage whenever the debt is barred; and he specifically refers to the case of *Elkins* v. *Edwards*, 8 Ga. 325, as an instance how the Georgia statute differs from the peculiarity of the California statute on which that court bases its opinion. In that case the mortgagor had made a subsequent promise to pay the debt and keep up the mortgage, but the court held that, as at that time he had parted with his title, no act of his could give validity to the barred lien. In the case before us, Nightingale, the father, was still the owner of the title when he allowed this judgment of foreclosure to go against him. There are other California cases referred to, to-wit, *Coster* v. *Brown*, 23 Cal. 142, and *Grattan* v. *Wiggins*, Id. 16, but in both these cases, though the language of the court extends to a mere mortgagee, yet, in fact, the parties who were permitted to plead the statute were the persons who had bought the title from the mortgagor, and were, under decisions in this state, (Georgia,) entitled so to plead. Upon the whole, therefore, I am of the opinion that the subsequent mortgagee has no more right to plead the statute, as though he stood in the shoes of the debtor, than any other creditor. He has no title to the land. He has nothing but a mortgage lien. The Georgia courts have decided that a judgment creditor could not set up, as against

another judgment creditor, that the debt of the latter was tainted with usury, and there is nothing in a Georgia mortgage putting the mortgagee in a better position than a judgment creditor. It is true he has a lien on the land, but so has the creditor by judgment. It is true, also, that our courts have said of the mortgagee that, if he obtains his mortgage without notice of a secret lien, he is for his protection to be treated as a purchaser; not that he is a purchaser, but that he is to be treated as such for his protection. But he has yet no title, nor was it the intent of these decisions so to hold, because the statute, in express terms, says that in Georgia the mortgagee has no title, but only a lien. I am therefore of the opinion that a decree ought to be entered for the defendants, the children of P. M. Nightingale, denying the prayer of plaintiff's bill.