[No. 1,460.]

## THE PEOPLE OF THE STATE OF CALIFORNIA *v.* JOHN G. KLUMPKE, ELISHA HIGGINS, ALEXANDER BLANC, WILLIAM C. HOFF, A. A. HARVEY, W. J. TURNER, HERMAN WOHLER, AND C. K. GARRISON.

EVIDENCE IN EJECTMENT—DIAGRAM TO SHOW CLAIM.—In an action of ejectment, where the question in controversy was the position of the red line, or water front, of San Francisco: *held*, that a diagram, made by the County Surveyor and believed by him to be correct, though not an official plat, was admissible in evidence for the purpose of showing what the party offering it claimed to be the true position of such line.

SAN FRANCISCO WATER FRONT—HARBOR COMMISSIONERS' MAP.—In an action of ejectment by the State for land in San Francisco claimed to be outside of the red line, or water front: *held*, that the map, purporting to have been made in 1864 by order of the State Harbor Commissioners, but not shown to have been approved or adopted by them, was not competent evidence in their favor to show the true location of the red line.

SAN FRANCISCO WATER FRONT—STATE LAND COMMISSIONERS' MAP.— The Board of State Land Commissioners, appointed under the Act of May 18th, 1853, establishing such Board (Stats. 1853, p. 219), was authorized to find the red line, or water front, of San Francisco, as established by the Act of March 26th, 1851 (Stats. 1851, p. 307), and their map is competent evidence tending to prove the position of that line.

SAN FRANCISCO WATER FRONT—DEEDS OF STATE LAND COMMISSIONERS AS EVIDENCE.—In an action of ejectment by the State for land in San Francisco between Jackson and Pacific streets, and claimed by it to be outside of the red line, or water front: *held*, that deeds of the State Land Commissioners, appointed under the Act of May 18th, 1853 (Stats. 1853, p. 219), for lands to the south of Jackson street, were not admissible for the purpose of showing the position of the red line.

LOCATION OF THE SAN FRANCISCO RED LINE.—The question of the location of the San Francisco red line, or water front, established by the Act of March 26th, 1851 (Stats. 1851, p. 307), is a question of fact; and the acts of official surveyors and Boards in running and mapping out the line, though they tend to show its position, yet as they could not change, they do not conclusively fix it.

SURVEYS OF SAN FRANCISCO RED LINE.—As the Act of March 26th, 1851, establishing the red line, or water front, of San Francisco (Stats. 1851, p. 307), mentioned a number of points on it with the same certainty as the initial point, the true position of the line between any two of such points can be ascertained by drawing a line between them, and it is unnecessary for a survey to commence at the initial point.

Points decided.

SAN FRANCISCO RED LINE — ACTS OF STATE LAND COMMISSIONERS —
ESTOPPEL IN PAIS.—If the State Land Commissioners, appointed under
the Act of May 18th, 1853 (Stats. 1853, p. 219), changed the red line, or
water front of San Francisco, as laid down by the Act of March 26th, 1851
(Stats. 1851, p. 307), an alleged adoption and recognition by the State
of the acts of the Commissioners would not effect a change or create
an estoppel *in pais* as against the State, unless it should be shown that the
Legislature, and other officials, while adopting and recognizing such acts,
knew that they had changed the line.

EVIDENCE OF SALES OF SAN FRANCISCO LOTS, OUTSIDE OF RED LINE,
EXCLUDED.—In a suit by the State, for land in San Francisco, outside of
the red line, or water front, claimed by defendants under deeds from the
Board of State Land Commissioners, appointed under the Act of May 18th,
1853 (Stats. 1853, p. 219): *held*, that, as the Board was destitute of authority
to sell such lots, it was no error to exclude defendants' proffered evidence of
the reports of the Board to the Legislature, and the Controller's receipts
for the purchase money paid.

DEEDS OF STATE LAND COMMISSIONERS, OUTSIDE OF SAN FRANCISCO RED
LINE, VOID.—Deeds from the State Land Commissioners, appointed under
the Act of May 18th, 1853 (Stats. 1853, p. 219), so far as they include lands
in San Francisco, lying outside of the red line, are void.

NO REVERSAL OF VERDICT AS AGAINST EVIDENCE, WHERE CONFLICT.—
A verdict and judgment will not be disturbed, as being against evidence,
where there is a conflict in the evidence.

DEED VOID FOR UNCERTAINTY OF DESCRIPTION. — Where a deed called
for a lot in San Francisco, commencing on the north line of Jackson street,
seventy-two feet from the intersection of Jackson and Drumm streets, run-
ning thence easterly on the north line of Jackson street fifty feet; thence north
on East street forty feet; thence at right angles west fifty feet; and thence to
the place of beginning: *held*, that if East street did not extend north of Jack-
son street, or was so understood and recognized, East street was a false call,
and must be rejected; and the deed, as the description then would fit equally
well four different parcels of land, would be void for uncertainty.

STATUTE OF LIMITATIONS — ADVERSE POSSESSION OF ONE'S GRANTORS.—
In an ejectment suit by the State, for land in San Francisco outside of the
red line, where a defendant claimed title under the statute of limitations,
and relied upon the adverse possession of his grantors; but it appeared that
his deeds either called for land different from that sued for, or were void for
uncertainty of description: *held*, that he did not connect himself, by means
of such deeds, with the possession of his grantors.

APPEAL from the District Court of the Fourth Judicial
District, City and County of San Francisco.

This was an action brought by the people of the State, upon the relation of the Board of State Harbor Commissioners, to recover possession of certain property in the City and County of San Francisco, two hundred and eighty-eight feet in length by one hundred feet in width, lying north of Jackson street and east of what was alleged to be the water front of said city and county, as established by law. Of this property the defendants were in possession, and had built piers and wharves thereon, from which they collected tolls and rents. The answers set up that the separate portions of the land held by defendants, respectively, were within and to the westward of the water front established by law; they also alleged quiet, peaceable, notorious, and exclusive possession in themselves and their grantors for ten years and upwards, and set up the statute of limitations.

When the case was called for trial in the Court below, the defendant, William C. Hoff, was not prepared, on account of the absence of his counsel, and the cause proceeded, under the order of the Judge, as against the other defendants. There was a verdict and judgment for the plaintiff, motion for new trial made and overruled, and this appeal by the defendants was both from the order overruling the motion for a new trial and from the judgment.

On the trial the plaintiff called George C. Potter as a witness, who testified that he was City and County Surveyor; that he was acquainted with the water front of the city since 1849; that he was employed by the State Harbor Commissioners, in the Spring of 1864, to make a survey and map of the city front, in accordance with the Act of the Legislature creating the Board of State Harbor Commissioners; that he made such a map, which was produced in Court; that he did not think the red line (the water front line) was laid down on the map where it crossed Jackson and Pacific

CAL. REPS. XLI—34

streets; that a diagram had been made in his office, under his directions, which he had examined, and believed to be correct.

The diagram was then produced, marked "Exhibit A," and offered in evidence. Defendants objected that it was irrelevant, incompetent, and inadmissible, as being a mere diagram or sketch made in the office of the witness, without authority, and not an official act, and that none of the parties could be affected by it. The Court overruled the objections and permitted the diagram to go to the jury, as showing what plaintiff claimed to be the true line. Defendants excepted.

The plaintiff also offered in evidence the map above referred to, marked "Exhibit B." Defendants objected, on the ground that it appeared to have been gotten up by the direction of the Harbor Commissioners, without authority of law; that it was prepared ex parte on their behalf, for their own purposes, and could not affect the rights of, or be used as evidence against, the defendants. The Court overruled the objection and allowed the map in evidence, and defendants excepted.

The defendants, among other testimony, introduced in evidence "An Act to provide for the disposition of certain property of the State of California," passed March 26th, 1851 (Stats. 1851, p. 307); also, "An Act to provide for the sale of the interest of the State of California in the property within the water-line front of the City of San Francisco, as defined in and by the Act of March 26th, 1851," approved May 18th, 1853 (Stats. 1853, p. 219); also, "An Act supplementary to and amendatory of the Act of May 18th, 1853," passed May 1st, 1855 (Stats. 1855, p. 226). They called as a witness Richard H. Sinton, who testified that he had resided in the city since 1848; was familiar with the city front property; was connected with the State Land Commissioners (who had been appointed by and under the above

mentioned Act of May 18th, 1853); had sold all the prop-
erty sold by the Land Commissioners, as auctioneer for the
city and State; and had, and produced in Court, the original
map, according to which the sale was made by order of the
Land Commissioners, and which had been made under their
supervision.

Defendants offered the map in evidence. Plaintiff objected
that it was immaterial and incompetent, on the ground that
the Land Commissioners had no authority to fix the red
line, and there was nothing to show that they had any
knowledge of it. The Court sustained the objection and
ruled the maps out, and defendants excepted.

Defendants also offered in evidence, deeds from the State
Land Commissioners for all the lots and blocks lying between
Drumm, Jackson, and Washington streets, and between Wash-
ington, Clay, and Drumm streets, for the purpose of showing
the location of the red line of 1851, as fixed, ascertained,
and laid down by the State Land Commissioners, under the
provisions of the Act of May 18th, 1853, and that the State
had sold and disposed of its property in the same, in lots
and blocks, according to such location of said Commission-
ers. The plaintiff objected, on the ground that such testi-
mony was irrelevant and immaterial. The Court sustained
the objection, and defendants excepted.

Defendants also offered in evidence the reports of the
State Land Commissioners to the Legislature, dated January
7th, 1854, and other legislative documents relating to the
Commission and its proceedings, and also receipts of the
State Controller for the amounts due to the State from sale
of lots between Jackson, Pacific, and Drumm streets and
the eastern limits of the city. Plaintiff objected, on the
ground that they were immaterial. The objection was sus-
tained, the testimony ruled out, and defendants excepted.

The defendant Alexander Blanc, in his answer, claimed
the lot commencing on the north side of Jackson street,

seventy-two feet east from the northeast corner of Jackson and Drumm streets; running thence east fifty feet; thence at a right angle north forty feet; thence west fifty feet; and thence south forty feet. The deeds under which Blanc claimed described the property as a lot beginning on the north line of Jackson street, seventy-two feet from the intersection of Jackson and Drumm streets; running east on the north line of Jackson street fifty feet; thence north on East street forty feet; thence at right angles west fifty feet; thence south parallel with Drumm street to the place of beginning. Plaintiff objected to these deeds, on the grounds that they did not describe the property claimed by Blanc, and that they were void for the uncertainty of the description.

*J. P. Hoge,* for Appellants.

1. The diagram " A " was a mere sketch, made in the office of the witness Potter, without authority—not an official act—and it was not competent as evidence to affect the rights of defendants.

2. The map " B," purporting to be made by order of the State Harbor Commissioners, was improperly admitted in evidence. The Commissioners, under the statute (Stats. 1863–4, p. 144), were simply required, by an accurate plot, to show the location and lines of the streets along the water front. The evidence did not show that this map had ever been filed, or acted upon or adopted, or approved in any way by the Commissioners. The true location of the so-called red line of 1851, is a question of fact. (*Cook* v. *Bonnet,* 4 Cal. 398.) Upon what principle can the ex parte proceedings of the plaintiffs, as represented by the Harbor Commissioners, be made evidence against the defendants? The plaintiffs themselves locate the line upon which depends their whole right as against these defendants, and by their own act make it evidence, and conclusive evidence, as the

result proved, of their own rights, and of the adverse rights of the defendants. Nothing can be found in the Act of 1864 to sustain any such action.

3. The true location of the red line, as established in 1851, could only be ascertained and fixed by commencing at the initial point of the line, as established by the Act of the 26th of March, 1851, and then running out the whole line according to the calls of the Act itself. The only point that could by any possibility serve to determine the position of the line, was the initial point. (*Lay* v. *Neville*, 25 Cal. 553; *Waugh* v. *Waugh*, 28 N. Y. 94.)

4. There was error in refusing to admit the map of the State Land Commissioners. It is difficult to understand the reasoning by which the Harbor Commissioners' map was admitted and the State Land Commissioners' map excluded. The latter was not only authorized by the Acts of the Legislature, but it was intended to fix definitely and permanently, on the part of the State, the line of water front in San Francisco, beyond which the State would never go. This map was, therefore, not only admissible, but was conclusive evidence against the State of the true location of the red line. It was, in fact, an act of State, locating the water front boundary as delineated thereon. (*People* v. *Frisbie*, October Term, 1865, not reported.)

5. The Court erred in refusing to admit the deeds of the State Land Commissioners for the lots and blocks lying between Jackson, Washington, and Drumm streets, and Washington, Clay, and Drumm streets. They were offered for the purpose of showing the location of the red line of 1851, as fixed, ascertained, and laid down by the State Land Commissioners, under the provisions of the Act of May 18th, 1853, and that the State sold and disposed of its property in the same, in lots and blocks, according to such location.

6. It was error to exclude the reports of the State Land Commissioners and the legislative proceedings thereon, and

the receipts of the State Controller. With full knowledge of all the facts, the State acquiesced in all the actings, doings, and proceedings of the Commissioners, who were her own officers; she received the purchase moneys, to a large amount, resulting from these sales; never questioned the entire validity of their proceedings, or the titles derived under their proceedings—nay, expressly recognized them in the Act establishing the Harbor Commission; and this practical location of a doubtful line by the officers of the State was suffered to stand unquestioned, and rights to grow up under the proceedings for a long series of years. Upon no principle of law, morals, or right can the State now be permitted to question the proceedings, or go behind the action of her officers upon any pretense that they had exceeded their powers, or had committed errors in the location of the property undertaken to be sold, and certainly not in an action of ejectment. The line fixed by the Commissioners and acquiesced in by the State cannot, at this late day, be questioned or disturbed by the State. (*McCaulay* v. *Brooks*, 16 Cal. 26; *Grogan* v. *San Francisco*, 18 id. 609; *O'Donnell* v. *Kelsey*, 10 N. Y. 417; *Hunt* v. *Johnson*, 19 id. 284; *Baldwin* v. *Brown*, 16 id. 359; *Jackson* v. *Murray*, 7 John. 10; *Jackson* v. *Smith*, 9 id. 100; *Jackson* v. *Wood*, 13 id. 346; *Rockwell* v. *Adams*, 7 Cowen, 762; *Jackson* v. *Ogden*, 7 John. 245; *Richardson* v. *Pickering*, 41 N. H. 380; *Woods* v. *Wilson*, 37 Penn. St. 384.)

7. The State offered no proof that the premises were ever vacant and unoccupied. Counsel relied upon the presumption of title in the State. That no such presumption arises in the absence of all proof that the premises were ever vacant and unoccupied, within the time prescribed by the statute of limitations, is, we think, well settled. (*People* v. *Trinity Church*, 22 N. Y. 44; *People* v. *Van Rensselaer*, 9 N. Y. 319; *People* v. *Livingston*, 8 Barb. 259.) Defendants were shown to be in peaceable, quiet, and undisturbed possession

at the commencement of the action, and there was no evidence whatever of any superior right or title in the plaintiff. The presumptions arising from possession alone are presumptions in favor of title in the possessor. They are applicable when the State itself is the claimant. The person in possession is supposed to have acquired the title which the State once held. The only advantage conceded to the people when they are plaintiffs in ejectment is, that they may encounter and defeat the presumption arising from present occupancy, by showing that the possession has been vacant at any time within ten years, which is the period required to bar such an action by adverse possession. This is as far as the adjudged cases have ever gone.

*E. J. & J. H. Moore*, for appellant Blanc, contended, in addition to points similar to those made by Mr. Hoge, that the deeds to defendant Blanc were not objectionable on account of alleged uncertainty of description; that whatever ambiguity there might be, without extraneous aid, as to the initial point (whether seventy-two feet east or west from Drumm street, on the north side of Jackson), there was in every instance an entry under the several deeds upon the very lot claimed in defendant's answer; and the lot being clearly identified as the one intended to be described, and entry taken and held under these instruments, was, to all intents whatsoever, the one conveyed. Parol evidence, or concurrent acts, would avail to help out the description, and put the identity of the lot beyond dispute; and the deeds were, therefore, admitted, notwithstanding objection. But there were physical facts equally conclusive of the point. If the lot commenced on the north side of Jackson street, seventy-two feet east of the intersection of Jackson and Drumm streets, and thence ran easterly fifty feet, and then northerly on the line of East street, it was plain that it could only be located in one place.

*Edward Tompkins*, for Respondent.

1. The State owned the *locus in quo*, by virtue of its sovereignty, and the defendants wholly failed to connect themselves with the title thereto. The premises are wholly without the red line of the water front, as established by the Act of March 26th, 1851. The defendants averred that the premises they claimed were within that line; and hence the real issue in the case was the location of the red line of 1851. For the purpose of making out title defendants attempted to show that they had acquired it under deeds from the Board of State Land Commissioners. But to this attempt there are two answers: First, that the deeds do not profess to go beyond the red line, but, on the contrary, bound upon it; and second, the Board had no power or authority beyond that line, and the purchasers knew it. The Act under which they were appointed expressly limited them to land "within the line fixed by the Act of March 26th, 1851." It could be claimed with equal plausibility that a power of attorney authorizing the sale of a particular piece of property only, would enable the attorney to convey everything belonging to his principal. If the Board could go one foot beyond the red line, they could convey the whole Bay of San Francisco. The several offers to prove that the State received the money for the lots sold was immaterial in itself, and doubly so, because not accompanied with any offer to show that it was received with knowledge that the Board had exceeded its powers. The offer of the map of the Land Commissioners of the property within the red line, it is not supposed would have been material to any issue in this case, even if it had been otherwise sufficiently proven. The Commissioners had no more power to affect the rights of the State outside of the red line, by making a map, than they had by giving a deed.

2. The defendants wholly failed to establish a defense

under the statute of limitations. It is not conceded that the statute of limitations has any application. That statute, we submit, applies only to land as such, held by the State under grant from the Government, or otherwise acquired, to be used and disposed of at its pleasure, and not to the rights which it holds by virtue of its sovereignty, in trust for the benefit of the whole people. It needs neither argument nor authority at this day to establish that the Legislature could not grant away the exclusive use of the entire bay to individuals, and if not the whole, they could not any part that would interfere with the general and beneficial use. Surely they cannot do by neglect what they could not by express grant. It is further insisted, that the Act of April 24th, 1853, substantially repealed the statute of limitations, if it had before applied to such cases. It rendered the occupation by the defendants illegal, and made it a misdemeanor for the defendants to collect wharfage, or to interfere with the Commissioners in the use and occupation of the property outside of the red line. The first beach and water Act made the red line the permanent line of the water front, and required the space beyond it to be kept free from all obstructions. The second Act (Stats. 1851, p. 311) required the spaces between the wharves, outside of the red line, to be kept free from obstructions for public slips. Thus, the entry and occupation by the defendants have all been in direct violation of the statutes of the State, and for the last year have been a continuous misdemeanor, upon which no right to continue to violate the law can be founded. But if the statute applied, the defendants had the whole benefit of it, and the jury who heard the evidence found directly against them upon the facts.

3. The defendant Blanc presents his case separately from the other defendants, and claims the benefit of alleged

errors, that affect his interests only. It will be manifest from an examination of the transcript that he had no interests to be prejudiced. On his title, as exhibited by himself, no error that the Court could have committed would have been material. It is only those that are prejudiced that can complain of errors. It is manifest that he must make out title or show an adverse possession by himself and his grantors for over ten years. All the title or adverse possession for that length of time, which he even attempts to make out, is under a certain quitclaim deed of persons who are not shown ever to have had either title or possession, and which, in addition to other objections, is void for uncertainty of description. It calls for a lot on the north line of Jackson street, commencing seventy-two feet from the intersection of Jackson and Drumm streets. This might be east or west, and it might be seventy-two feet from the northeast or from the northwest corner. Thus, there would be four lots, either one of which would answer that call in the deed. The second line does not help it, but the third runs "north on East street." That, it will be remembered, is the east line of the lot, and the utmost the defendant can claim is, that his lot is thus located between East and Drumm streets, with East street for its eastern boundary. But by reference to the map it will be seen that not only the lot as thus located, but the whole of East street, also, is within the red line of 1851, and that the lot by no possibility can be a part of the demanded premises. Really, East street only extended to Jackson street, and hence the East street line is an impossible call in the deed.

By the Court, RHODES, C. J.:

The Court did not err in admitting in evidence the diagram marked "A," offered by the plaintiffs. It was offered as a diagram, and was admissible as such, in connection with,

and explanatory of, the testimony of the City and County Surveyor, and for the purpose of showing what the plaintiffs claimed to be the true position of the red line—the water front.

The Court erred in admitting in evidence the map marked Exhibit "B," and purporting to be made by the Harbor Commissioners. It was not competent evidence of the true location of the red line, as it was not shown that it had been approved or adopted by the Harbor Commissioners.

The Court erred in refusing to admit in evidence the map made by the State Land Commissioners. The Board, in the discharge of its duties, was authorized to find the red line, but it was not authorized to change the line, or to establish a new line in the place of that which was established by the Act of March 26th, 1851. The map was competent evidence, tending to prove the position of that line, but was not conclusive evidence on that point.

The deeds of the State Land Commissioners, offered in evidence by the defendants, were not admissible for the purpose of showing the position of the red line; but they would have been admissible for the purpose of showing title in such of the defendants as claimed through those deeds, had the Court admitted evidence tending to show—as do the maps made by the State Land Commissioners—that the red line was to the east of the lots mentioned in the deeds.

The question of the location of the red line is a question of fact. The line was established and fixed by the Act of 1851. The acts of the surveyors and of the different Boards in running the line, and making maps to show the line, do not fix the line, but those acts tend to show the position of the line as established by the Act of 1851. Those officials were authorized to find, but not to fix the line, and if in running the line on the ground or in platting it, they have varied from the calls of the Act, their proceedings did not have the effect to change the line.

A number of points in the red line were mentioned in the Act, and many of them were described with the same certainty as the initial point. By drawing a line through those points which are near the premises in controversy, the position of the red line, between Jackson and Pacific streets, can be ascertained. It was unnecessary for the surveyors, who testified in the case, to have commenced their surveys at the initial point of the red line.

If the red line, as laid down by the Land Commissioners, was the red line as established by the Act of 1851, then any adoption or recognition thereof by the State, through the Legislature, or any of her officials, adds nothing to the title of the defendants, who claim under the deeds of the Land Commissioners. If, on the other hand, the line laid down by the Land Commissioners varies from the true water front line established by the Act of 1851, the alleged adoption and recognition by the State, of the acts of the Land Commissioners in that respect will not aid the defendants, unless it be shown that the Legislature and the other officials, while adopting and recognizing the acts of the Land Commissioners, knew that they had changed the red line. That fact is not shown. The *estoppel in pais* asserted by the defendants against the State fails for the same reasons.

The State is neither bound nor estopped by the proceedings of the Land Commissioners in selling lots outside of the water front—if they sold any east of the red line—for they were as destitute of authority to sell lands beyond that line as beyond the State lines. The Court, therefore, did not err in excluding the reports of the Land Commissioners, and other legislative documents, and the Controller's receipt for the purchase money.

The Land Commissioners had no power to convey lands lying outside of the red line. By providing that the space adjacent to and outside of that line should be kept open for the benefit of commerce, the Legislature prohibited the sale

of lands lying to the east of that line, and along the eastern water front of the city. The deeds of the Land Commissioners, to the persons under whom certain of the defendants claim title, so far as they include lands—if any—lying east of the red line, are void.

The title derived from the Land Commissioners' deeds may be assailed in an action of ejectment, by showing that the land purporting to be conveyed by the deeds, is beyond the limits of the lands which they were authorized to sell and convey; in other words, by showing that the Commissioners had no authority to sell and convey the lands described in the deeds. The description of the lots mentioned in the Land Commissioners' deeds is not given in the transcript, but we understand that the deeds purport to convey beach and water lots. Beach and water lots, at the eastern front of the city, are situated west of the red line.

If it be found that the lands in controversy are east of the red line, the defendants cannot rely on the Land Commissioners' deeds in proof of title, because the Land Commissioners had no power to sell or convey such lands; and the defendants cannot maintain their defense to the action, unless they can show adverse possession as against the State. The lands lying to the east of the red line were covered by the waters of the bay; the State held the title for the benefit of commerce and navigation, and had provided by law, that for that purpose, they should be kept open and free from obstructions. The question whether a private person can acquire a title by adverse possession, to lands held in that manner and for that purpose, will not be discussed or decided at this time. But if adverse possession of such lands can be maintained, the verdict against the defendants, other than Blanc, will not be disturbed as contrary to the evidence relative to that issue, for the evidence is manifestly conflicting.

The defendant Blanc claims that the premises for which

he defends are within the red line, and that, whether they are within or without that line, he has shown an adverse possession for more than ten years. He does not claim title under the State. All the deeds through which he claims, down to and including the Sheriff's deed to McGlensy, describe the property as bounded on the south by Jackson street, and on the east by East street. If East street did not extend north of the north line of Jackson street, or if it was not so understood and recognized, East street is a false call, and must be rejected; and in that event the description of the premises would fit equally well four different parcels of land, and the deeds would be void for uncertainty. Should East street not be rejected as a false description, then the premises described in the deed would not extend to the east of the red line, and would not include any portion of the premises in controversy. The defendant Blanc, therefore, does not connect himself, by means of the deeds above mentioned, with the possession of the respective grantors named in the deeds.

Judgment reversed, and cause remanded for a new trial.

SPRAGUE, J., concurring:

I concur in the judgment.