[No. 6940.   Decided March 30, 1908.]

SEQUIM BAY CANNING COMPANY, *Appellant*, v. H. J. BUGGE
*et al.*, *Respondents.*[1]

APPEAL—REVIEW—PRESUMPTIONS—DEMURRER. Where there is a
demurrer upon two grounds, and an order sustaining the demurrer
upon one ground, it will be presumed that it was overruled as to the
other ground stated.

TRESPASS—TIDE LANDS—PARTIES. The state is not a necessary
party defendant to an action by a lessee of state lands for a trespass
thereon.

PUBLIC LANDS—TIDE LANDS—TITLE TO CLAMS. Clams imbedded
in tide lands leased by the state belong to the lessee of the land.

SAME—POWER TO SELL TIDE LANDS. The state has power to dis-
pose of and invest private persons with the ownership of tide lands,
subject only to the paramount right of navigation and the uses of
commerce.

SAME—RIGHTS OF LESSEE—TRESPASS. The lessee of tide lands
under a regular lease from the state is entitled to the possession and
control of the land thereof, and a third person digging clams thereon
at low tide is a trespasser.

INJUNCTION—AGAINST TRESPASS—ADEQUACY OF DAMAGES. The
lessee of state tide lands may maintain an action to enjoin continu-
ing trespasses by persons who go thereon at low tide to dig clams
and destroy the clam beds, a judgment for damages not affording
adequate compensation.

Appeal from a judgment of the superior court for Clallam
county, Still, J., entered May 20, 1907, upon sustaining a
demurrer to the complaint, dismissing an action to enjoin a
trespass upon tide lands leased from the state.   Reversed.

*Trumbull & Trumbull*, for appellant.

*J. E. Cochran* and *Guie & Guie*, for respondents, to the
right of the public to take clams, oysters or shell and other
fish, between the low and high tide marks, regardless of the
ownership of the land, cited, among other authorities:

[1] Reported in 94 Pac. 922.

*Brown v. Lakeman,* 15 Pick. 151; *Lakeman v. Butler,* 17 Pick. 436, 28 Am. Dec. 311; *Lakeman v. Burnham,* 7 Gray 437; *Parker v. Cutler Milldam Co.,* 20 Maine 353, 37 Am. Dec. 56; *Lincoln v. Davis,* 53 Mich. 375, 19 N. W. 103, 51 Am. Rep. 116; *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273, 42 L. R. A. 305; *Brown v. De Groff,* 50 N. J. L. 409, 14 Atl. 219, 7 Am. St. 794; Gould, Waters, §§ 55, 62; *Proctor v. Wells,* 103 Mass. 216; *Arnold v. Mundy,* 1 Halstead 1, 10 Am. Dec. 356; *Coolidge v. Williams,* 4 Mass. 140; *Commonwealth v. Bailey,* 13 Allen 541; *Lowndes v. Dickerson,* 34 Barb. 586. If oysters or clams exist in their native state on a piece of ground, a person cannot deprive the public of the right to take them by depositing others in the same place. *Decker v. Fisher,* 4 Barb. 592; *Fleet v. Hegeman,* 14 Wend. 42; 2 Blackstone, § 9; Angell, Tide Waters (2d ed.), §§ 158, 159; *Shepard v. Leverson,* 2 N. J. L. 369. So far as the public right is concerned there is no difference between the shore of tidal waters and the tidal waters themselves. Coulson, Waters, 14; Hall, Rights in the Sea Shores (2d ed.), 174; *Peck v. Lockwood,* 5 Day (Conn.) 22; *Commonwealth v. Alger,* 7 Cush. 53.

HADLEY, C. J.—This is an action to enjoin the defendants from continuing what is alleged to be a trespass upon tide lands held by the plaintiff under leases of the state of Washington, the alleged trespass being for the purpose of digging and removing clams from the land. As the cause was determined in the trial court upon a demurrer to the complaint, the averments of the latter must, therefore, for the purposes of this appeal, be considered as the facts in the case. Such facts are as follows: The tide lands were leased from the state by George Davis, James Dick, and Frank Fisher. The purpose of leasing the lands was for the cultivation and taking of clams from the same by way of providing for the establishment of a cannery for the canning of clams and clam nectar. In furtherance of said project said lessees and their

associates have incorporated as the Sequim Bay Canning Company, the plaintiff herein, and have assigned to the plaintiff the several leases issued to them by the state. The only value of the lands is for the cultivation, propogation, and digging of clams, and for that purpose they are very valuable. The plaintiff and its assignors, for the purpose of increasing the productiveness of the clam beds on said lands and for the purpose of improving the quality of the clams thereon, have from time to time since they leased the lands planted eastern clams thereon. The defendants Bugge and Sullivan, are operating a clam cannery in the neighborhood of the said lands, and have conspired together to dig clams on the lands of the plaintiff, and to that end they have induced, persuaded, and hired the other defendants, who are Indians, to enter upon the said lands and to dig and take therefrom large quantities of clams, which they have taken and are taking without plaintiff's consent, and the same are being canned in the said cannery operated by the defendants Bugge and Sullivan.

On or about the 15th day of December, 1906, the assignors of the plaintiff posted written notices on the lands that clam digging was forbidden thereon, that eastern clams for breeding purposes had been planted there, and that all persons were prohibited from disturbing said planted clams or digging others. They also personally notified the defendants to cease trespassing on the lands and to cease digging and removing clams. Notwithstanding said notices, the defendants continued to trespass on the lands and to dig and remove clams in large quantities under the direction and at the instigation of said Bugge and Sullivan. On the 29th day of December, 1906, the plaintiff, through its officers, again notified the defendants at their said cannery to cease trespassing and digging said clams. Thereupon the defendant Sullivan ordered the plaintiff's officers out of the cannery, and threatened to shoot them and to do violence upon them if they interferred with the digging of said clams, and refused to stop digging and canning them. He also advised the said Indians

to continue digging, and the Indians have, at the request of
Sullivan and Bugge, continued to dig clams from said lands
and to destroy the eastern clams planted as aforesaid. Unless
prevented by the court, they will continue such trespass and
destruction, thereby destroying the value of the lands and the
leases of the plaintiff, ruining its business, and causing irre-
parable damage which cannot be compensated in money. To
the complaint stating the above as facts, the defendants de-
murred on two grounds: (1) that there is a defect of parties
defendant, in that the state of Washington is a necessary
party defendant; (2) that the facts stated are not sufficient
to constitute a cause of action upon which to base injunctive
relief. The demurrer was sustained on the last-named ground,
and the plaintiff, having elected to stand upon its complaint,
declined to plead further. Thereupon judgment was en-
tered dismissing the action, and the plaintiff has appealed.

Presumably the court overruled the demurrer on the first
ground stated, viz., that there is a defect of parties defend-
ant. Such a presumption may well be indulged, inasmuch as
the order upon the demurrer specifies the other ground as the
basis for the ruling and says nothing about the matter of de-
fect of parties. In any event the demurrer as to defect of
parties should have been overruled. The state, under the
averments of the complaint, is in no sense a necessary party.
It leased the tide lands in question to appellant's assignors,
and placed them in possession and control. The possession
and control have, for the time being, passed to the plaintiff
as the assignee of the lessees. The trespass upon that posses-
sion by mere wrongdoers may be redressed without necessarily
impleading the state, which is in no sense a party to the tres-
pass or to the immediate possession which has been disturbed.

Referring now to the other ground of demurrer, we are
advised by respondents' brief that it was the view of the trial
court that the appellant, through the leases from the state,
acquired no right to the possession of the clams superior to
the rights of the public. It is contended by respondents that,

inasmuch as the lands are at times covered by tidal waters and
are uninclosed and vacant, the full common law rights of navigation and fishing remain in the waters above the lands. It
is manifest that there can be no navigation except upon the
waters, and at such times only as the waters engulf the soil.
Ordinary fishing must also be conducted at such times, since
the swimming fish can come there and exist at no other time.
It is common knowledge, however, that clam digging must be
done when the waters have subsided, and that the gathering
and taking of clams requires a digging down into the soil, a
contact with and disturbance of the land itself. Even if
clams should be classified as fish under the term of "shell fish,"
as suggested by respondents, still they cannot be taken by the
use of any methods exercised in the prosecution of the common
right of fishing in the waters. Clams ordinarily live in the
soil under the waters, and not within the waters. It is true
they derive a part of their sustenance from the sea during the
times the waters overspread the lands; but at other times they
live, not merely upon, but actually within the land. They
therefore, in a very material sense, belong with the land.
When taken they must be wrenched from their beds, made
well down in the soil itself. It must follow therefore that,
if the state has authority to invest one with the private ownership of the tide lands, such investiture must carry with it the
right to exercise dominion and ownership over what is upon
the land, and especially over things so closely related to the
soil as clams.

At this stage of our state's history it seems unnecessary to
pursue any extended discussion as to the power of the state
to invest private persons with the ownership of tide lands.
The state asserted its original ownership when its constitution was framed. Const., art. 17, § 1. As early as 1891 this
court, after careful consideration, held that the title to such
lands is beyond controversy in the state, and that the state
has full power to dispose of the same, subject to no restrictions save those imposed upon the legislature by the constitu-

tion of the state and the constitution of the United States. *Eisenbach v. Hatfield*, 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632. The doctrine of that case has never been modified by this court, and it has since been mentioned approvingly in a number of decisions. *Bowlby v. Shively*, 22 Ore. 410, 30 Pac. 154, was decided after *Eisenbach v. Hatfield, supra,* and the same doctrine was declared by the Oregon supreme court. That case was afterwards exhaustively reviewed by the supreme court of the United States. *Shively v. Bowlby,* 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331. The latter court, after reviewing the laws of the different states upon the subject, said, on page 26 of the volume cited, as follows:

"The foregoing summary of the laws of the original states shows that there is no universal and uniform law upon the subject; but that each state has dealt with the lands under the tide waters within its borders according to its own views of justice and policy, reserving its own control over such lands, or granting rights therein to individuals or corporations, whether owners of the adjoining upland or not, as it considered for the best interests of the public. Great caution, therefore, is necessary in applying precedents in one state to cases arising in another."

Thus the power of each state to dispose of these lands as it sees fit is recognized as the prevailing law. The opinion, on page 56, quotes with approval from the opinion of the supreme court of Oregon, as follows:

"From all this it appears that when the State of Oregon was admitted into the Union, the tide lands became its property and subject to its jurisdiction and disposal; that in the absence of legislation or usage, the common law rule would govern the rights of the upland proprietor, and by that law the title to them is in the state; that the state has the right to dispose of them in such manner as she might deem proper, as is frequently done in various ways, and whereby sometimes large areas are reclaimed and occupied by cities, and are put to public and private uses, state control and ownership therein being supreme, subject only to the paramount right of navigation and commerce. The whole question is for the state to determine for itself; it can say to what extent it will pre-

serve its rights of ownership in them, or confer them on others. Our state has done that by the legislation already referred to; and our courts have declared its absolute property in and dominion over the tide lands, and its right to dispose of its title in such manner as it might deem best, unaffected by any 'legal obligation to recognize the rights of either the riparian owners, or those who had occupied such tide lands,' other than it chose to resign to them, subject only to the paramount right of navigation and the uses of commerce."

Following the above quotation, the Federal supreme court makes the following statement on page 57:

"By the law of the State of Oregon, therefore, as enacted by its legislature and declared by its highest court, the title in the lands in controversy is in the defendants in error; and, upon the principles recognized and affirmed by a uniform series of recent decisions of this court, above referred to, the law of Oregon governs the case."

Thus, the doctrine early announced by this court in *Eisenbach v. Hatfield* has been fully approved by the highest American authority, and there is no longer any doubt about the power of the state in the premises.

Exercising its power in the premises, this state has classified its tide lands with other public lands of the state. Bal. Code, §§ 2133, 2134 (P. C. §§ 8162, 8163). Provision is made for their sale as for other lands [Bal. Code, §§ 2177-2181 (P. C. §§ 8206, 8208], and special authority for leasing them has been conferred by the legislature. Bal. Code, § 2180 (P. C. § 8209). The complaint in this cause says the appellant is the holder of the lands by virtue of a regular lease from the state. It follows that it is entitled to the possession and control of the lands leased, and respondents are trespassing when they go upon them and remove clams without appellant's consent. Adequate compensation for the continuing trespass and the constantly accruing damages cannot be had by a mere judgment for damages, and the complaint therefore states ground for injunctive relief. We think the complaint states a cause of action, and that it was error to sustain the demurrer.

The judgment is reversed, and the cause is remanded with instructions to overrule the demurrer to the complaint.

MOUNT, CROW, FULLERTON, RUDKIN, DUNBAR, and ROOT, JJ., concur.