[No. 12639.  Department One.  July 7, 1915.]

ROBERT C. HILL et al., Appellants, v. FRED W. NEWELL
et al., Respondents.[1]

PUBLIC LANDS—LANDS UNDER WATERS—GRANTS—BEDS AND SHORES
—TITLE.  Under the Federal grant to the state, and the assertion of
title by Const., art. 17, § 1, to the beds and shores of navigable
streams, the title of the state is paramount and absolute, and not
restricted to the power of regulation for the purposes of navigation.

NAVIGABLE WATERS—RIPARIAN RIGHTS—TITLE TO BEDS—ABANDON-
MENT OF STREAM.  Riparian owners upon a navigable stream acquire
no title to portions of the beds and shores abandoned by the state
in improving and straightening the stream, under 3 Rem. & Bal.
Code, § 8173a, granting to the commercial waterway district the title
to the beds and shores that cease to be a part of the stream; since
the state's title is paramount, and riparian rights are subject to the
rights of navigation, and extend only to the use and accustomed flow
of water, unless new lands result from accretion, reliction, or avul-
sion.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered August 8, 1914, in favor of
the defendants, in an action for an injunction, tried to the
court.  Affirmed.

E. L. Skeel and W. M. Whitney, for appellants.

Shorett, McLaren & Shorett, for respondents.

CHADWICK, J.—Respondents are the commissioners of Com-
mercial Waterway District No. 1, a municipal corporation
organized under the act of 1911, Laws of 1911, p. 11 (3
Rem. & Bal. Code, § 8166a), and the act of 1913, amendatory
thereof, Laws of 1913, p. 115 (3 Rem. & Bal. Code, § 8170a).

Acting in their public capacity, respondents undertook the
improvement and straightening of the Duwamish river, a
navigable stream.  There is a bend in the Duwamish river
as it originally flowed, known locally, and referred to in the
record, as the Ox Bow Bend.  A part of the improvement

[1]Reported in 149 Pac. 951.

made by respondents was to cut a channel through the neck of Ox Bow Bend and to divert the waters so that, instead of flowing around the bend, they will henceforth flow on a straight course toward the mouth of the stream. The plan of improvement provides for the building of a bulkhead to prevent the flow of water into the bend. The effect of the improvement will be to back water into the bend from the point of its lower intersection with the new channel. It is agreed by both parties that a deposit of sediment and silt will gradually accumulate in the channel of the bend and that it will eventually become so filled as to be useless for navigation. The present improvement is, in effect, an abandonment on the part of the state of that part of the Duwamish river for purposes of navigation.

Appellants are the owners of abutting property, and have brought this action to restrain the filling of the old channel and its ultimate sale by the waterway district. We understand the real question which is submitted for our opinion is whether the title to the abandoned bed is in appellants or the waterway district.

Appellants make an engaging argument based upon the theory that the power and authority of the Federal government over navigable waters is expressly limited to a sovereign power of regulation for the purposes of navigation; citing *Scott v. Lattig*, 227 U. S. 229; *Sweet v. City of Syracuse*, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289; *United States v. Chandler-Dunbar Water Power Co.*, 209 U. S. 447; *St. Anthony Falls Water Power Co. v. St. Paul Water Commissioners*, 168 U. S. 349, 358; and further, that "all title and power of control by the state of Washington over the beds and waters of a navigable stream comes from a transfer of that power from the United States government and is not in any degree greater than the rights of the United States government itself, and is, therefore, simply a sovereign power of regulation for the purposes of navigation, and the proprietary rights of riparian owners are *jure natura*, subject,

however, to this sovereign control. *Union Depot etc. Co. v. Brunswick*, 31 Minn. 297, 17 N. W. 626, 47 Am. Rep. 789; *Hobart v. Hall*, 174 Fed. 433; *Willow River Club v. Wade*, 100 Wis. 86, 76 N. W. 273, 42 L. R. A. 305."

It is apparent that appellants have misconceived their standing. Their argument, as well as the cases relied on, is based on the doctrine of riparian proprietorship; that is, that the abutting owner is the owner of the bed of the stream, whether navigable or nonnavigable, subject only to the right of navigation; that the state takes no more than a right to maintain such waters as commercial highways, and that its assertion of title to the beds and shores of navigable streams and lakes is no more than an assertion of such right.

No such limitation is to be found in the Federal grant, nor is the assertion of title on the part of the people, art. 17, § 1, qualified in any way:

"The state of Washington asserts its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide in waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and lakes: Provided, that this section shall not be construed so as to debar any person from asserting his claim to vested rights in the courts of the state."

Navigable streams and lakes are as much a part of the public domain as are the lands abutting or adjoining, and the grantee of the government takes only such title as is granted by it. It is a rule that a grant from the government will not be enlarged by construction.

"The general rule of construction applying to grants of public lands by a sovereignty to corporations or individuals is that the grant must be construed liberally as to the grantor and strictly as to the grantee, and that nothing shall be taken to pass by implication." 26 Am. & Eng. Ency. Law (2d ed.), p. 425.

In consequence, it has been the uniform holding of the supreme court of the United States that it will recognize and

administer the law prevailing in the particular state when passing upon the extent of its own grant, when that grant is bordered or intersected by a navigable stream or lake. *Shively v. Bowlby*, 152 U. S. 1; *St. Anthony Falls Water Power Co. v. St. Paul Water Com'rs*, 168 U. S. 349, 361; *County of St. Clair v. Lovingston*, 23 Wall. (90 U. S.) 46, 68; *Barney v. Keokuk*, 94 U. S. 324, 338; *Illinois Cent. R. Co. v. Chicago*, 176 U. S. 646, 660; *Goodtitle v. Kibbe*, 9 How. (50 U. S.) 470; *Packer v. Bird*, 137 U. S. 661; *Scranton v. Wheeler*, 179 U. S. 141, 187; *Mobile Transportation Co. v. Mobile*, 187 U. S. 479; *Pollard v. Hagan*, 3 How. (44 U. S.) 212.

This court held in the case of *Eisenbach v. Hatfield*, 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632, that the state's title to the beds and shores of navigable lakes and streams is paramount and absolute, and that an abutting owner has no riparian or littoral right in the waters and shores of the stream. See *Brace & Hergert Mill Co. v. State*, 49 Wash. 326, 95 Pac. 278, and *State ex rel. Ham, Yearsley & Ryrie v. Superior Court*, 70 Wash. 442, 126 Pac. 945, where the cases stating this rule are collected. If it were held that these abutting owners had a riparian right, their remedy would be to compel the flow of the waters in their accustomed way, because the right of riparian proprietorship would still be subject to the right of navigation. The riparian right is a right to the use and accustomed flow of water. It is not a right in the bed of a stream unless new land results from accretion, reliction or avulsion.

While it is admitted that much that is said in the case of *Newell v. Loeb*, 77 Wash. 182, 137 Pac. 811, is apparently decisive of this case, it is insisted that our holding was not necessary to that decision and should not be followed. We have reexamined that case, and while it may be that some of the argument there employed might have been omitted, yet, nevertheless, we are satisfied that it states the true rule where it says of the appellants in that case that "the fact, if it be

a fact, that their land borders upon the shore of the [Duwamish] river does not give them any right either in the bed of the stream or the waters thereof." The same question was met and discussed by the supreme court of California in the case of *People v. California Fish Co.*, 166 Cal. 576-584, 138 Pac. 79:

"In *Ward v. Mulford*, 32 Cal. 372, the court said: 'Such land is held by the state in trust and for the benefit of the people. The right of the state is subservient to the public rights of navigation and fishery, and theoretically, at least, the state can make no disposition of them prejudicial to the right of the public to use them for the purposes of navigation and fishery, and whatever disposition she does make of them her grantee takes them upon the same terms upon which she holds them, and, of course, subject to the public rights above mentioned,' " citing cases.

This is in effect the holding of this court. The case continues:

"It is also settled that in the administration of this trust when the plan or system of improvement or development adopted by the state for the promotion of navigation and commerce cuts off a part of these tide lands or submerged lands from the public channels, so that they are no longer useful for navigation, the state may thereupon sell and dispose of such excluded lands into private ownership or private uses, thereby destroying the public easement in such portion of the lands and giving them over to the grantee, free from public control and use. On this subject in *Illinois C. Ry. Co. v. Illinois*, 146 U. S. 452, (36 L. Ed. 1018, 13 Sup. Ct. Rep. 118), the court said: 'It is grants of parcels of lands under navigable waters, that may afford the foundation for wharves, piers, docks and other structures in aid of commerce, and grants of parcels which, being occupied, do not substantially impair the public interest in the lands and waters remaining, that are chiefly considered and sustained in the adjudged cases as a valid exercise of legislative power consistently with the trust to the public upon which such lands are held by the state.' . . .

"The most striking instance of the exercise of this power of absolute disposition of such tide or submerged lands by

the state of California is found in the laws providing for the improvement of the water-front of San Francisco. By these laws the water-front line was fixed, cutting off from navigation a large area of land which was subject to the daily flux and reflux of the tides and part of the lands always under water, upon which line a sea wall was constructed, and the area landward of this wall was subsequently surveyed into lots and streets, sold into private ownership and filled in for private use. This area now constitutes a large portion of the business section of San Francisco. The following cases recognize the authority of the state to make such absolute disposition of these particular lands: *Eldridge v. Cowell*, 4 Cal. 87; *Guy v. Hermance*, 5 Cal. 74, 63 Am. Dec. 85; *Hyman v. Read*, 13 Cal. 444; *Holladay v. Frisbie*, 15 Cal. 634; *Wheeler v. Miller*, 16 Cal. 125; *Seabury v. Arthur*, 28 Cal. 142; *People v. Klumpke*, 41 Cal. 277; *Knight v. Haight*, 51 Cal. 171; *Friedman v. Nelson*, 53 Cal. 589; *LeRoy v. Dunkerly*, 54 Cal. 459; *Knight v. Roche*, 56 Cal. 21; *People v. Williams*, 64 Cal. 498; *San Francisco v. Straut*, 84 Cal. 124, 24 Pac. 814. In view of these well settled propositions it is obvious that the claim of the plaintiff to the effect that such lands cannot, under any circumstances, be alienated in fee to private parties to the exclusion of the public, cannot be sustained."

We conclude, therefore, that the judgment of the court holding that the title to the bed of the Duwamish river, being in the state by title absolute and subject to its disposition, passed, upon its abandonment by the respondents, to the Commercial Waterway District, under 3 Rem. & Bal. Code, § 8173a, was the proper judgment to be entered.

Affirmed.

MORRIS, C. J., MOUNT, HOLCOMB, and PARKER, JJ., concur.