[No. 52459-9. En Banc. February 12, 1987.]

BENELLA CAMINITI, ET AL, *Petitioners*, v. BRIAN J. BOYLE, ET AL, *Respondents*.

*Peter T. Jenkins,* for petitioners.

*Kenneth O. Eikenberry, Attorney General, Nixon Handy, Senior Assistant,* and *Ann C. Essko, Assistant,* for respondents.

ANDERSEN, J.—

FACTS OF CASE

This action was commenced by a petition filed in this court seeking a writ of mandamus directed to the Commissioner of Public Lands and the State Treasurer.[1] Petitioners ask us to declare unconstitutional the state statute (RCW 79.90.105) which allows owners of residential property abutting state–owned tidelands and shorelands to install and maintain private recreational docks on such lands without payment to the State. We concluded that the petition met the necessary criteria for retention by this court and retained original jurisdiction.[2] Having now considered the parties' briefs and oral argument on the merits, we decline to hold the statute unconstitutional. Issuance of the writ will be denied.

The case was submitted on agreed facts. Those pertinent

---

[1] Const. art. 4, § 4; RAP 16.2.

[2] *See Tacoma v. O'Brien,* 85 Wn.2d 266, 268, 534 P.2d 114 (1975).

to our disposition of the case are as follows:[3]

"By the Laws of the State of Washington of 1983, 2nd ex. sess., ch. 2, sec. 2, p. 2160 (formerly SB 3290; now codified at RCW 79.90.105), the following legislation became effective on June 13, 1983:

'The abutting residential owner to state–owned shorelands, tidelands, or related beds of navigable waters, other than harbor areas, may install and maintain without charge a dock on such areas if used exclusively for private recreational purposes and the area is not subject to prior rights. This permission is subject to applicable local regulation governing construction, size, and length of the dock. This permission may be revoked by the department upon finding of public necessity which is limited to the protection of waterward access or ingress rights of other landowners or public health and safety. The revocation may be appealed as a contested case under chapter 34.04 RCW. Nothing in this section prevents the abutting owner from obtaining a lease if otherwise provided by law.'

"Prior to the effective date of RCW 79.90.105, approximately 370 residential owners of private land abutting public aquatic lands were paying the State approximately $35,000 in annual rental for private recreational docks on public aquatic lands, outside of harbor areas, pursuant to the then statutorily authorized leasing program. This amount includes all monies received by the Department of Natural Resources as lease application fees pursuant to RCW 79.01.088, RCW 79.90.100 and RCW 79.01.720. The administrative cost to the Department of Natural Resources of maintaining its leasing program for private recreational docks on public aquatic lands, outside of harbor areas, prior to the effective date of RCW 79.90.105 amounted to a substantial portion of the lease revenues.

"Since the effective date of RCW 79.90.105, the Department of Natural Resources has terminated the leasing program for private recreational docks on public aquatic lands, outside of harbor areas, and has not issued new leases or

[3]Agreed Statement of Facts, paras. 5–10 (paragraph numbering deleted).

collected lease application fees or annual rental. The $35,000 in annual rental previously collected does not necessarily reflect the amount of annual rental that the State would have charged in succeeding years had RCW 79.90.105 never been enacted, which amount may have been more or less.

"Petitioner Caminiti has interests affected by the amount of revenue that the State generates each year from public resources.

"Petitioner Caminiti and the members of petitioner Committee for Public Shorelines Rights have recreational interests that are affected by their ability to acquire access to and use public aquatic lands and waters. These include, but are not limited to, their ability to fish, swim, navigate, water ski, beachcomb, procure shellfish, sunbathe, observe natural and undisturbed wildlife, play on open beaches, and enjoy seclusion. These interests are impacted to some extent by the presence, location, and private use of private recreational docks on these public aquatic lands and waters.

"The elimination of lease fees may be a factor considered by some upland owners in deciding whether to build a private recreational dock on abutting public aquatic lands, although it is not known to what extent this factor would actually influence such decisions."

There is one principal issue.

ISSUE

Does RCW 79.90.105, which allows owners of residential property abutting state–owned tidelands and shorelands[4]

---

[4]In addition to referring to state–owned shorelands and tidelands, RCW 79.90.105 also deals with "*related beds* of navigable waters, other than harbor areas . . ." (Italics ours.) Bedlands are those lands lying beyond the line of navigability of rivers and lakes and those lands beyond the low tide mark of tidal waters. RCW 79.90.050. Bedlands in tidal waters may present unique problems, particularly with respect to federal regulation of navigable waters. However, the parties have chosen to argue this case primarily with respect to tidelands and shorelands which, as a practical matter, are those principally involved. As a consequence, bedlands will not be separately dealt with herein other than to point out by this note that what we hold concerning tidelands and shorelands generally applies to bedlands as well.

to install and maintain private recreational docks on such lands free of charge, violate article 17, section 1 of the Washington State Constitution or the "public trust doctrine"?

## DECISION

The short answer to the question posed by this issue is "no". Upon admission into the Union, the State of Washington was vested with title in, and dominion over, its tidelands and shorelands. Since statehood, the Legislature has had the power to sell and convey title to state tidelands and shorelands. Prior to 1971, when the Legislature by statute changed its policy, the State had sold separately 60 percent of its tidelands and 30 percent of its shorelands. The Legislature has never had the authority, however, to sell or otherwise abdicate state sovereignty or dominion over such tidelands and shorelands. By enacting the statute at issue in this case (RCW 79.90.105), the Legislature has seen fit to grant only a revocable license allowing owners of land abutting state-owned tidelands and shorelands to build recreational docks thereon subject to state regulation and control. The Legislature did not thereby surrender state sovereignty or dominion over these tidelands and shorelands, but through the Department of Natural Resources and local subdivisions of state government continues to exercise control over them.

■ By our state constitution, "[t]he state of Washington asserts its ownership to the beds and shores of all navigable waters in the state up to and including the line of ordinary high tide, in waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and lakes . . ." Const. art. 17, § 1 (part). This was but a formal declaration by the people of rights which our new State possessed by virtue of its sovereignty,[5] and which declaration had the effect of vest-

---

[5]*Robinson v. Silver Lk. Ry. & Lumber Co.*, 153 Wash. 261, 274, 279 P. 1109 (1929).

ing title to such lands in the state.[6]

As this court has repeatedly held, under the foregoing constitutional provision the State of Washington has the power to dispose of, and invest persons with, ownership of tidelands and shorelands subject only to the paramount public right of navigation and the fishery.[7] Perhaps the clearest exposition of the nature of the State's ownership in this regard is that contained in this court's opinion in the early case of *New Whatcom v. Fairhaven Land Co.*, 24 Wash. 493, 499, 64 P. 735 (1901):

> The title to lands under tide waters in the sea, arms, and inlets thereof, and in tidal rivers, within the realm of England, was, by the common law, deemed to be vested in the king, as a public trust, to subserve and protect the public right to use them as a common highway for commerce, trade, and intercourse. The king, by virtue of his proprietary interest, could grant the soil so that it should become private property; but his grant was subject to the paramount right of the public use of navigable waters, which he could neither destroy nor abridge. In every such grant there was an implied reservation of the public right. Upon the American Revolution the title and dominion of the tide waters, and of the lands under them, vested in the several states of the Union within their respective borders, subject to the rights surrendered by the constitution to the United States.

And further:

> The provision of art. 17, § 1, of the constitution was evidently for the purpose of establishing the right of the state to the beds of all navigable waters in the state, whether lakes or rivers, or fresh or salt, to the same extent the crown had in England in the sea, and in the arms and inlets thereof, and in the tidal rivers, and to eliminate the distinctions existing under the rule of the common law in this respect.

---

[6]*Brace & Hergert Mill Co. v. State*, 49 Wash. 326, 331, 95 P. 278 (1908).

[7]*Hill v. Newell*, 86 Wash. 227, 231, 149 P. 951 (1915); *Grays Harbor Boom Co. v. Lownsdale*, 54 Wash. 83, 89, 102 P. 1041, 104 P. 267 (1909); *Sequim Bay Canning Co. v. Bugge*, 49 Wash. 127, 131–32, 94 P. 922 (1908); *Eisenbach v. Hatfield*, 2 Wash. 236, 240–43, 26 P. 539 (1891).

*New Whatcom,* at 500.

The *New Whatcom* court also stated that

the public has an easement in such waters for the purposes of travel, as on a public highway, which easement, as it pertains to the sovereignty of the state, is inalienable and gives to the state the right to use, regulate, and control the waters for the purposes of navigation; . . .

*New Whatcom,* at 504.

From the foregoing it is clear that the State's ownership of tidelands and shorelands is not limited to the ordinary incidents of legal title, but is comprised of two distinct aspects.

The first aspect of such state ownership is historically referred to as the jus privatum or private property interest.[8] As owner, the state holds full proprietary rights in tidelands and shorelands and has fee simple title to such lands. Thus, the state may convey title to tidelands and shorelands in any manner and for any purpose not forbidden by the state or federal constitutions and its grantees take title as absolutely as if the transaction were between private individuals.[9] In the case before us, the State has not by this statute conveyed title to the land, but as will be discussed shortly, has given a revocable license only.[10]

The second aspect of the state's ownership of tidelands and shorelands is historically referred to as the jus publicum or public authority interest.[11] The principle that the public has an overriding interest in navigable waterways and lands under them is at least as old as the Code of

---

[8]*Eisenbach,* at 240.

[9]*Eisenbach,* at 244–45; *Sequim Bay,* at 131. *See Port of Seattle v. Oregon & W. R.R.,* 255 U.S. 56, 63, 65 L. Ed. 500, 41 S. Ct. 237 (1921); *Shively v. Bowlby,* 152 U.S. 1, 12–13, 38 L. Ed. 331, 14 S. Ct. 548 (1894). *See also Orion Corp. v. State,* 103 Wn.2d 441, 464, 693 P.2d 1369 (1985) (Utter, J., concurring).

[10]*See* 2 *American Law of Property* § 8.109 (1952); R. Cunningham, W. Stoebuck & D. Whitman, *Property* § 8.1 (1984); 1 A. Reeves, *Real Property* § 235 (1909).

[11]*Shively,* at 11.

Justinian, promulgated in Rome in the fifth century A.D.[12] It is also found in the English common law, from whence our own common law is derived, as early as the 13th century A.D.[13] The concept is a part of the established common law of the United States[14] and, as set forth above, is stated with clarity in the seminal opinions of this court interpreting Const. art. 17, § 1.[15] This jus publicum interest as expressed in the English common law and in the common law of this State from earliest statehood, is composed of the right of navigation and the fishery.[16] More recently, this jus publicum interest was more particularly expressed by this court in *Wilbour v. Gallagher,* 77 Wn.2d 306, 316, 462 P.2d 232, 40 A.L.R.3d 760 (1969), *cert. denied,* 400 U.S. 878 (1970) as the right

> of navigation, together with its incidental rights of fishing, boating, swimming, water skiing, and other related recreational purposes generally regarded as corollary to the right of navigation and the use of public waters.

The state can no more convey or give away this jus publicum interest than it can "abdicate its police powers in the administration of government and the preservation of the peace."[17] Thus it is that the sovereignty and dominion over this state's tidelands and shorelands, as distinguished from *title,* always remains in the State, and the State holds such dominion in trust for the public. It is this principle which is

---

[12]T. Cooper, *Institutes of Justinian* § 1 (2d ed. 1841).

[13]2 *Bracton on the Laws and Customs of England* 39–40 (1968).

[14]*See Shively,* at 11–14; *Illinois Cent. R.R. v. Illinois,* 146 U.S. 387, 456–59, 36 L. Ed. 1018, 13 S. Ct. 110 (1892).

[15]*See Hill,* at 231; *Grays Harbor Boom Co.,* at 90–91; *Sequim Bay,* at 130–31; *New Whatcom v. Fairhaven Land Co.,* 24 Wash. 493, 499–503, 64 P. 735 (1901); *Eisenbach,* at 240–41.

[16]*Shively,* at 13; *Hill,* at 231.

[17]*Illinois Central,* at 453.

referred to as the "public trust doctrine".[18] Although not always clearly labeled or articulated as such, our review of Washington law establishes that the doctrine has always existed in the State of Washington.[19]

The test of whether or not an exercise of legislative power with respect to tidelands and shorelands violates the "public trust doctrine" is found in the following language of the United States Supreme Court:

> The control of the State for the purposes of the trust can never be lost, except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining.[20]

Accordingly, we must inquire as to: (1) whether the State, by the questioned legislation, has given up its right of control over the jus publicum and (2) if so, whether by so doing the State (a) has promoted the interests of the public in the jus publicum, or (b) has not substantially impaired it.

Before applying this test to the legislation before us, we first note that the requirements of the "public trust doctrine" are fully met by the legislatively drawn controls imposed by the Shoreline Management Act of 1971, RCW 90.58. *Portage Bay–Roanoke Park Comm'ty Coun. v. Shorelines Hearings Bd.*, 92 Wn.2d 1, 4, 593 P.2d 151 (1979). As we observed in *Portage Bay*, that act by its terms provides as follows:

> It is the policy of the state to provide for the management of the shorelines of the state by planning for and fostering all reasonable and appropriate uses. This policy is designed to insure the development of these shorelines in a manner which, while allowing for limited reduction of rights of the public in the navigable

---

[18]*See Illinois Central*, at 453; *Hill*, at 231.

[19]*See* Johnson & Cooney, *Harbor Lines and the Public Trust Doctrine in Washington Navigable Waters*, 54 Wash. L. Rev. 275, 285–87 (1979).

[20]*Illinois Central*, at 453.

waters, will promote and enhance the public interest. This policy contemplates protecting against adverse effects to the public health, the land and its vegetation and wildlife, and the waters of the state and their aquatic life, while protecting generally public rights of navigation and corollary rights incidental thereto.

*Portage Bay,* at 4 (quoting RCW 90.58.020 (part)). In its listing of preferred uses, this same statute also provides that "[a]lterations of the natural condition of the shorelines of the state, in those limited instances when authorized, *shall be given priority for single family residences, . . . piers,* and other improvements facilitating public access to shorelines of the state, . . ." (Italics ours.) RCW 90.58.020 (part).[21]

RCW 79.90.105, which is set out at the beginning of this opinion, and the validity of which is here challenged, substantially accords with the objectives of the Shoreline Management Act of 1971 just noted, and is supplemental thereto. The authorization in the challenged statute (RCW 79.90.105) which allows owners of residential property abutting state–owned tidelands and shorelands to install and maintain private recreational docks on such lands without charge is, to use the phraseology of the Shoreline Management Act of 1971, neither unreasonable nor inappropriate.[22] As will be pointed out in more detail shortly, the statute does not permit "unmonitored and uncontrolled expansion and multiplication of private docks on public aquatic lands and waters"[23] as argued by petitioners, but to the contrary, any such construction is subject to substantial regulation and control.

Turning next to the above stated test for violations of the "public trust doctrine", and applying that test to the questioned statute (RCW 79.90.105), we observe as

---

[21]*See Department of Ecology v. Ballard Elks Lodge 827,* 84 Wn.2d 551, 557, 527 P.2d 1121 (1974) (quoting this policy with approval).

[22]*See* RCW 90.58.020.

[23]Brief of Petitioners, at 39.

follows.

Right of control. Petitioners argue that "[a] common thread in judicially–pronounced public trust doctrine tests is deciding whether the state has retained adequate control over trust resources."[24] We agree.

By enacting RCW 79.90.105, the Legislature has given up relatively little right of control over the jus publicum, and has not conveyed title to any state–owned tidelands or shorelands. The statute in question relates only to residential owners whose property abuts public tidelands or shorelands.[25] The statute does not apply to harbor areas which lie in navigable waters in front of and 1 mile on either side of incorporated cities which border navigable waters and where special constitutional and statutory limitations apply.[26] The enactment limits dock use to private recreational purposes, thus eliminating any commercial usage. The statute also specifically authorizes an agency of the State, the Department of Natural Resources, to regulate the docks through its powers of revocation to protect waterward access and ingress rights of other landowners and the public health and safety. As further specifically expressed in the statute itself, the docks are subject to local regulation governing construction, size and length of the

---

[24]Reply Brief of Petitioner, at 24.

[25]Until 1971, Washington had a liberal policy favoring the sale of tidelands and shorelands. This resulted in approximately 60 percent of the tidelands and 30 percent of the shorelands acquired at statehood being transferred to private ownership. K. Conte, *The Disposition of Tidelands and Shorelands, Washington State Policy 1889–1982*, at x (Nov. 1982) (Master's Thesis, The Evergreen State College). The State presently owns approximately 1,300 miles of tidelands and the amount of shorelines has not been determined. WAC 332–30–100. RCW 79.94.150, which became operative August 9, 1971, now prohibits all such sales except for limited sales of certain second–class shorelands of navigable lakes. *See* RCW 79.94.210.

[26]*See* Const. art. 15; RCW 79.90.020. According to figures computed by the Department of Natural Resources, there are approximately 6,700 acres of constitutionally established harbor areas in the state (see WAC 332–30–100). *See generally* Johnson & Cooney, *Harbor Lines and the Public Trust Doctrine in Washington Navigable Waters*, 54 Wash. L. Rev. 275 (1979).

dock. The construction of private recreational docks is also regulated by the Shoreline Management Act of 1971 which requires that a dock be constructed in a manner that is consistent with the policy of the act and the local guide-lines, regulations or master programs promulgated under the act[27] and the planning enabling act which authorizes local zoning controls.[28] Although not expressly mentioned in the statute, state control also exists through the hydraulics act[29] and state flood control laws.[30] In Washington, abutting landowners have no riparian rights in state–owned tidelands and shorelands;[31] accordingly, the ultimate state control is that the Legislature having by this statute given abutting landowners the license to use its tidelands and shorelands, can likewise revoke that license by repealing the statute in the event it sees fit to do so. None of which is to mention the various federal and other controls over such docks which may be imposed pursuant to the commerce clause of the United States Constitution.[32]

Promotion of the interests of the public. The statute also promotes the interests of the public in the jus publicum, albeit to a limited degree. The Shoreline Management Act of 1971, discussed above, stresses that "coordinated planning is necessary in order to protect the public interest associated with the shorelines of the state while, at the same time, recognizing and protecting private property rights consistent with the public interest."[33] The statute under review expresses a part of that policy; it is a practical

---

[27]RCW 90.58.140(1).

[28]RCW 36.70.

[29]*See* RCW 75.20.100.

[30]RCW 86.16.080.

[31]*Eisenbach v. Hatfield,* 2 Wash. 236, 249–53, 26 P. 539 (1891).

[32]U.S. Const. art. 1, § 8.

[33]RCW 90.58.020 (part).

recognition that one of the many beneficial uses of public tidelands and shorelands abutting private homes is the placement of private docks on such lands so homeowners and their guests may obtain recreational access to navigable waters. No expression of public policy has been directed to our attention which would encourage water uses originating on public docks, as they do, while at the same time discouraging any private investment in docks to help promote the use of public waters.

Impairment of the jus publicum. In any event, nothing in the statute substantially impairs the jus publicum. Private docks cannot, of course, block public access to public tidelands and shorelands, and the public must be able to get around, under or over them.[34] Recreational docks existed on public tidelands and shorelands before enactment of the statute, and still do; the principal difference being that under current statutory policy there is no obligation to pay rental or lease fees. As discussed above, the public ownership of such lands also remains unchanged; and state and local governments continue to regulate the construction of docks thereon, as does the federal government in some situations.

Lastly in this connection, respondent public officials argue as follows:

> RCW 79.90.105 was passed to rectify an unfair situation. Responsible landowners who voluntarily entered into a state lease were penalized by paying a lease fee. The vast majority of landowners who refused to come forward were rewarded by free use of state property. Despite efforts by [the Department of Natural Resources] to achieve greater compliance, the leasing program in practical terms was unenforceable.[35]

While there is some support for the foregoing explanation of the background of this statute in the history of state

---

[34]WAC 332–30–144(4)(d).

[35]Brief of Respondents, at 67.

tideland and shoreland disposition policy[36] and the record herein, it is unnecessary for us to opine either as to the accuracy of this explanation or its merits. Suffice to say, based on the law set forth herein, the Legislature was the appropriate forum in which to do battle on that issue, and the Legislature's decision to enact the statute in question was an entirely appropriate one for it to make.

The enactment of RCW 79.90.105 by the Legislature did not violate either the "public trust doctrine" or article 17, section 1 of our state constitution relating to state tidelands and shorelands. We also observe that the legislation enacted here is a far cry from that confronting the United States Supreme Court in the leading "public trust doctrine" case of *Illinois Cent. R.R. v. Illinois,* 146 U.S. 387, 36 L. Ed. 1018, 13 S. Ct. 110 (1892). In that case, the Illinois Legislature had not only sold all of the land under one of the world's largest harbors (the Harbor of Chicago) to a private railroad company, but had also surrendered all right to control the harbor. There it was held that by so doing the Illinois Legislature had abdicated state sovereignty and dominion over the jus publicum; here, the Washington Legislature has not abdicated state sovereignty or dominion over the jus publicum.

The remaining issues may be more succinctly dealt with.

Petitioners also argue that the statute violates Const. art. 8, § 5, one of the "lending of credit" provisions of the state constitution, which reads:

> Credit Not To Be Loaned. The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation.

We have consistently held that a statute is presumed to be constitutionally valid and that the burden of overcoming such presumption is upon the party challenging the stat-

---

[36]*See generally* K. Conte, *The Disposition of Tidelands and Shorelands, Washington State Policy 1889–1982* (Nov. 1982) (Master's Thesis, The Evergreen State College).

ute.[37] As above discussed, RCW 79.90.105 is by way of a revocable license allowing owners of land abutting state–owned tidelands and shorelands to use such lands for recreational docks, subject to numerous state and local controls. There is no loss of state money or credit inasmuch as no debt has been created by the statute.[38] Nor can it be said that there has been a gift of state money or property, since no donative intent is present.[39] Clearly also, the statute does not subsidize private enterprise, jeopardize state assets, expend state moneys or abdicate state control over state property.[40] Petitioners have not sustained their heavy burden of proof on this issue.

Petitioners also claim that the statute violates the equal protection clauses of the federal and state constitutions. The Fourteenth Amendment and the state privileges and immunities clause, Const. art. 1, § 12, contain substantially identical protections in this regard.[41] In this connection, petitioners contend that the statute impinges on their constitutional right to travel and therefore the statute must be judged under a strict scrutiny/compelling state interest test. Although the right to travel is fundamental, a challenged statute must have a certain "amount of impact" on the ability of a person to travel between and among the states before the strict scrutiny test is triggered.[42] There is

---

[37]*See Public Empl. Relations Comm'n v. Kennewick,* 99 Wn.2d 832, 836, 664 P.2d 1240 (1983); *In re Marriage of Johnson,* 96 Wn.2d 255, 258, 634 P.2d 877 (1981).

[38]*See State ex rel. Graham v. Olympia,* 80 Wn.2d 672, 676, 497 P.2d 924 (1972).

[39]*See Louthan v. King Cy.,* 94 Wn.2d 422, 428, 617 P.2d 977 (1980). *See generally* Spitzer, *An Analytical View of Recent "Lending of Credit" Decisions in Washington State,* 8 U. Puget Sound L. Rev. 195, 195–99 (1985).

[40]*See Johnson,* at 264–68.

[41]*Equitable Shipyards v. State,* 93 Wn.2d 465, 476, 611 P.2d 396 (1980).

[42]*Macias v. Department of Labor & Indus.,* 100 Wn.2d 263, 273, 668 P.2d

no such impact here. In any event, as discussed herein, there is nothing in the statute or its application which restricts the public's right to walk over, or otherwise appropriately use, state tidelands and shorelands. There is no interference with petitioner's right to travel.

The rational basis test is used in situations, such as here, where a legislative classification involves neither a suspect class nor a fundamental right.[43] The statute refers to all owners of residential property abutting state–owned tidelands and shorelands. The fact that only owners of land adjoining state tidelands and shorelands own land from which docks can be built out onto such state lands is a rational basis for distinguishing them from others. We perceive nothing inherently unreasonable about the state Legislature allowing adjoining landowners, their tenants and invitees, to cross state–owned tidelands and shorelands in order to gain access to navigable waters for recreational purposes. Applying rational scrutiny to the legislation in question, we conclude that it does not violate constitutional equal protection guaranties.[44]

The petitioners not having prevailed herein, we do not address the various bases on which they claim attorneys' fees.

The writ petitioned for is denied.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, CALLOW, and DURHAM, JJ., and SCHUMACHER, J. Pro Tem., concur.

DORE, J. (dissenting)—I believe that RCW 79.90.105 violates Const. art. 8, § 5, which prohibits the State from lending credit or giving gifts to private parties. The grant of

1278 (1983). *See* 2 Rotunda, Nowak & Young, *Treatise on Constitutional Law: Substance and Procedure* § 18.38, at 680 (1986).

[43]*Myrick v. Pierce Cy. Comm'rs,* 102 Wn.2d 698, 701, 677 P.2d 140, 687 P.2d 1152 (1984).

[44]*See Equitable Shipyards,* at 478.

free use of state tidelands and waterways to private parties to maintain private recreational docks confers no benefit to the State, and constitutes an impermissible gift. I would hold RCW 79.90.105 is therefore unconstitutional, and I would grant the petitioners' writ of mandamus compelling the State not to enforce the statute.

Const. art. 8, § 5 provides:

> The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation.

This section has been interpreted to mean that the State cannot either lend credit or give a gift of state funds to a private individual. *See, e.g., Adams v. UW,* 106 Wn.2d 312, 722 P.2d 74 (1986); *State Hwy. Comm'n v. Pacific Northwest Bell Tel. Co.,* 59 Wn.2d 216, 367 P.2d 605 (1961).

Recently in *Adams v. UW, supra,* we held that the key factor in constitutional gift analysis is consideration. Clearly, by allowing private individuals to use the land to build docks, the State has transferred a valuable property right. *See, e.g., New Whatcom v. Fairhaven Land Co.,* 24 Wash. 493, 64 P. 735 (1901). The State has not received anything valuable in return, which makes this transfer an impermissible gift.

The respondents contend the State does receive consideration in that the private dock statute promotes a public interest. Namely, new jobs in constructing docks and new access to navigable waters for some private citizens result from RCW 79.90.105. I believe these contentions are unreasoned, unpersuasive, and cannot be the basis of an unconstitutional grant of the people's property, which has up to now been safeguarded and protected by our judicial system.

A statute conferring benefit to private interests is constitutional only in cases in which the benefit is incidental to a public purpose served by the statute. *Public Empl. Relations Comm'n v. Kennewick,* 99 Wn.2d 832, 664 P.2d 1240 (1983). The benefit to the public in this case is nonexistent; the only benefits arising from this statute go to private individuals. Furthermore, even if a remotely speculative

benefit accrues to dock builders, a statute enacted for a public purpose will be held invalid if the property is given to a private person for which the public neither expects nor receives consideration. *Ackerley Communications, Inc. v. Seattle,* 92 Wn.2d 905, 918, 602 P.2d 1177 (1979), *cert. denied,* 449 U.S. 804 (1980).

CONCLUSION

I dissent to the majority's decision. There is no public benefit arising from RCW 79.90.105. It is not disputed that the effect of the statute is to give away, for free, valuable state property. This gift is prohibited by Const. art. 8, § 5, and I would issue a writ of mandamus preventing state officials from implementing a blatantly unconstitutional statute.

Reconsideration denied July 29, 1987.