MADSEN, J. (concurring)
¶ 45 I agree with the majority that the legislature expressly consented to the "Three Fingers" fill's impairment of navigable waters when it enacted RCW 90.58.270, the savings clause. I also agree with the majority that by enacting the savings clause, the legislature *562 did not violate the public trust doctrine. I write separately because the majority decides this case by way of judicial fiat, rather than applying our established precedent. In doing so, the majority is concerned that applying our test in Caminiti v. Boyle, 107 Wash.2d 662, 732 P.2d 989 (1987), will not resolve the broader implications that might flow from this decision. Specifically, the majority states,
The Caminiti test does not adequately account for the special circumstances leading to the development of these fills, the awakening of the public trust doctrine from judicial slumber, and the critical need for settled property titles in these fills for Washington's economy, resident companies, and private citizens.
Majority at 559. I acknowledge the importance of the majority's concerns, but we would have reached the same conclusion by relying on our established precedent, avoiding the uncertainty created by the majority as to when to apply the Caminiti test and when to simply declare it to be so.
*275 Discussion
¶ 46 In 1971, the legislature enacted the savings clause as a means of post hoc consent to the impairment of public trust rights "caused by the retention and maintenance of... structures, improvements, docks, fills, or developments" "placed in navigable waters prior to December 4, 1969." RCW 90.58.270(1). However, the savings clause does not extend to impairments that "are in trespass or in violation of state statutes." Id.
¶ 47 Additionally, any legislative act concerning the impairment of a navigable waterway, including the savings clause, must not violate the public trust doctrine. Under the public trust doctrine, the State maintains an interest in tidelands and shorelands known as the jus publicum. Caminiti, 107 Wash.2d at 668, 732 P.2d 989. Pursuant to the jus publicum, "sovereignty and dominion over this state's tidelands and shorelands, as distinguished from title, always remains in the State, and the State holds such dominion in trust for the public." Id. at 669, 732 P.2d 989. Specifically, the State must ensure the public's right
"of navigation, together with its incidental rights of fishing, boating, swimming, water skiing, and other related recreational purposes generally regarded as corollary to the right of navigation and the use of public waters."
Id. (quoting Wilbour v. Gallagher, 77 Wash.2d 306, 316, 462 P.2d 232 (1969) ).
¶ 48 Historically, this court has assessed whether a legislative act violates the public trust doctrine under the Caminiti test. Indeed, the majority agrees that the savings clause must not violate the public trust doctrine. The majority also agrees that any legislation that impairs the public trust remains subject to judicial review, and that "we generally use the Caminiti test" to evaluate public trust claims. Majority at 558. However, the majority rejects the Caminiti test here because the test is "supposed to be a *276 judicial check on the legislature, not automatic consent" to the actions of the legislature. Id. at 558. So, rather than assess whether the savings clause violates the public trust doctrine under the Caminiti test, or any other test, the majority holds that the best option is to simply extinguish the public trust right over fills and impairments created prior to December 4, 1969. This is both improper and unnecessary.
¶ 49 By declining to follow precedent, the majority strips our public trust doctrine jurisprudence of any meaningful bite. The majority makes it clear that depending on the desired outcome, the court may pick and choose when to apply Caminiti. While the majority argues special treatment is necessary in light of the unique circumstances surrounding the savings clause, its approach creates problematic consequences. Specifically, the majority argues that we must extinguish the public trust right over the fills and impairments that fall within the savings clause because there is a "critical need for settled property titles in these fills for Washington's economy, resident companies, and private citizens." Id. at 559. While settling these historical fills is important, there are undoubtedly also fills and impairments along Washington's shorelands and tidelands that fall outside the savings clause but share these same unique circumstances. For example, *563 a fill or impairment built between 1970 and 1975 has roughly the same historical, commercial, and economical value as a fill built between 1965 and 1969. Under the majority's approach, if the court feels strongly enough about a post-1969 fill or impairment, it may simply extinguish the public interest right for the same reasons of settling expectations, rather than risk the possibility of abatement under Caminiti.[1] In my view, *277 the Caminiti test sets forth the correct balance for assessing public trust violations and I see no reason to depart from its principled approach.
¶ 50 The Caminiti test requires us to assess
(1) whether the State, by the questioned legislation, has given up its right of control over the jus publicum and (2) if so, whether by so doing the State (a) has promoted the interests of the public in the jus publicum, or (b) has not substantially impaired it.
107 Wash.2d at 670, 732 P.2d 989.
¶ 51 The majority's main concern with using the Caminiti test is the potential for piecemeal litigation under the public trust doctrine, as much of Washington's tidelands and shorelands have been filled and developed. However, the doctrine of stare decisis requires a showing "that an established rule is incorrect and harmful before it is abandoned." In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970).
¶ 52 Caminiti is neither incorrect nor harmful. Because this case is a challenge to the savings clause, which treats all pre-1969 fills in the aggregate, the Caminiti test should also be applied in the aggregate, taking into account the combined impact of every historical fill falling under the protection of the savings clause. In Caminiti, this court used this test to assess whether RCW 79.90.105 violated the public trust doctrine. 107 Wash.2d at 665-66, 732 P.2d 989. Similarly, here, we should use the Caminiti test to assess whether the savings clause provision violates the public trust doctrine. By addressing the validity of the savings clause, using the Caminiti test, we leave no room for as-applied challenges to developments protected by the savings clause or for inconsistent results while preserving challenges to future changes in degree or character to those developments.
¶ 53 Still, the majority rejects the Caminiti test, and holds, without relying on any legal standard or any of this *278 court's precedents, that the savings clause does not violate the public trust doctrine.[2] The majority cites to cases from California and Maine dealing with the public trust doctrine, but does not rely on the analysis used by these jurisdictions in coming to their respective conclusions, only their results. In those cases, the courts extinguished the public trust interest over the historical fills within their respective jurisdictions. The majority follows suit, which is in direct conflict with this court's public trust doctrine jurisprudence.[3] Specifically, this court cannot strip the State of its jus publicum interest. See id. at 669, 732 P.2d 989 ("the sovereignty and dominion over this state's tidelands and shorelands, as distinguished from title, always remains in the State, and the State holds such dominion in trust for the public"). By extinguishing the *564 public trust right over all of the fills that fall within the savings clause, the majority effectively stripped the State of its jus publicum interest over those properties.
¶ 54 In a footnote, the majority says that it has not extinguished the public trust right over all fills within the savings clause because "[t]he public trust remains in place for fills that are in trespass or in violation of state statutes." Majority at 560 n.11. But, the primary purpose of the public trust doctrine is not to protect the public from trespass or violations of state statutes. Rather, the purpose of the public trust doctrine is to ensure the public's right to navigate Washington's waters free from any impediments, such as fills and improvements. The savings clause consents only to the "retention and maintenance" of the existing fills. By extinguishing the public trust right over these fills, landowners *279 may further improve or develop fills that fall within the savings clause and the State will no longer be able to protect the public under its jus publicum authority unless alterations or improvements constitute trespass, nuisance, or violate other state statutes.
¶ 55 The Caminiti test accounts for and balances both the State's jus publicum interest and the public's interest. Caminiti, 107 Wash.2d at 670, 732 P.2d 989. Importantly, the key distinction between the majority's approach and the Caminiti test is that under Caminiti, the State retains its jus publicum interest and, thus, may continue to protect the public. Under the majority's approach, if at some point the fills and impairments that fall within the savings clause change in degree or character (i.e., a change unrelated to the retention or maintenance of the fill), the State could not reassess its consent over these fills.
¶ 56 Finally, it is noteworthy that neither party asked this court to deviate from Caminiti, and there is no reason to do so. In applying the Caminiti test, we must first decide if the legislature gave up its right of control over the jus publicum by enacting the savings clause. I would hold that it did not. The legislature has merely consented to fills and other impairments existing before December 4, 1969. The State still maintains control over the jus publicum in all other respects.
¶ 57 Second, I would hold that the savings clause promotes the public's interests. The legislature passed the savings clause in response to this court's decision in Wilbour. In that case, we held that a landfill abutting Lake Chelan violated the public trust doctrine. 77 Wash.2d at 318, 462 P.2d 232. Had the legislature not enacted the savings clause in response, our Wilbour decision might have resulted in the abatement of thousands of properties along Washington's tidelands and shorelands. In other words, the savings clause promotes the public's interests because it protects the improvements to our tidelands and shorelands that were made before our public trust doctrine jurisprudence was fully developed.
*280 ¶ 58 Finally, I would hold that the savings clause does not substantially impair the jus publicum. These fills have been in existence for 50 years or more and have not been challenged, strong evidence that the legislature's action caused no injury to the public.[4]
¶ 59 Accordingly, I concur in the majority.
Johnson, J.
Stephens, J.
Wiggins, J.

The majority argues that our concerns are mere speculation, but we offer our concerns regarding fills created between 1970 and 1975 only to demonstrate the danger in the majority's decision to extinguish the public trust right over fills that fall within the savings clause. This is in stark contrast to the speculation that underpins the majority's decision to abandon Caminiti: that applying the Caminiti test may adversely affect "Washington's economy, resident companies, and private citizens." Majority at 559. Such speculation is not a valid reason for sidestepping our precedents because speculation knows no bounds.

The majority contends that we "take[ ] issue with [its] analysis" and that the Caminiti test too was "created by judicial fiat." Majority at 559 n.10. Not so. Rather, we are concerned by the majority's lack of analysis. Unlike the majority, the Caminiti court constructed an objective test that balances the State's jus publicum interest and the public's interest and creates precedent that lower courts can apply generally to any alleged public trust violation.

Interestingly, the majority states that "Caminiti was supposed to be a judicial check on the legislature, not automatic consent," and then proceeds in its opinion to give automatic consent to fills under the savings clause. Majority at 558.

While not raised by the parties, laches could appropriately be applied to bar such tardy challenges as this.